## DREW et al. v. UNITED STATES.

(Circuit Court of Appeals, Second Circuit. January 8, 1912.)

No. 47.

1. CRIMINAL LAW (§ 881*)—TRIAL—VERDICT—DEFINITENESS.

Two United States weighers attached to the customhouse were indicted in three counts for conspiracy to defraud the United States of its lawful duties on certain importations, etc., each of the counts relating to the same transaction and stating the same facts in different forms. After each count 50 overt acts were scheduled and alleged, the same acts after each count. By the verdict the jury found one of the defendants not guilty; another "guilty of overt act No. 21 only," and another "guilty of overt act No. 46 only." *Held*, that such verdict, in so far as it related to the defendants intended to be convicted, indicated an intention to convict them of conspiracy to defraud the United States, which was evidenced by the overt act referred to, and was therefore not fatally defective.

[Ed. Note.—For other cases, see Criminal Law, Dec. Dig. § 881.*]

2. CRIMINAL LAW (§ 696*)—RECEPTION OF EVIDENCE—STRIKING OUT.

Evidence of one of several conspirators to defraud the United States by false customs weights that at various times after a certain December 15th one of the defendants collected from the weighers of the dock bribe money, etc., should have been stricken on defendants' motion, where the witness immediately followed with a statement that he did not see such defendant collect any of the money from the weighers.

[Ed. Note.—For other cases, see Criminal Law, Dec. Dig. § 696.*]

3. CRIMINAL LAW (§ 1168*)—APPEAL—RULINGS ON EVIDENCE—PREJUDICE.

In a prosecution for conspiracy to defraud the United States out of customs duties, one of the defendants was not prejudiced by the court's improper refusal to strike out evidence of one of the conspirators that such defendant had collected bribe money, on its appearing by the witness' next answer that he did not see the money so collected, and therefore could not have known anything about it.

[Ed. Note.—For other cases, see Criminal Law, Dec. Dig. § 1168.*]

In Error to the Circuit Court of the United States for the Southern District of New York.

Charles D. Drew and Charles H. Wardell were convicted of conspiracy to defraud the United States, and they bring error. Affirmed.

This cause comes here upon writ of error to review judgments of conviction against the plaintiffs in error, who were tried on an indictment for conspiracy. Four men were indicted. One died before trial and another was found by the jury "not guilty."

The indictment was under section 5440, U. S. Rev. Stat. (U. S. Comp. St. 1901, p. 3676), which provides that: "If two or more persons conspire either to commit any offense against the United States or to defraud the United States in any manner or for any purpose, and if one or more of such parties do any act to effect the object of the conspiracy, all the parties to the conspiracy shall be liable to a penalty, etc." Reference should also be made to section 27 of the customs administrative act of June 10, 1890 (Act June 10, 1890, c. 407, 26 Stat. 141 [U. S. Comp. St. 1901, p. 3710]), which provides: "That any officer or employé of the United States who shall, except for lawful duties or fees, solicit, demand, exact or receive from any person, directly or indirectly, any money or thing of value in connection with or pertaining to the importation, appraisement, entry, examination, or inspection of goods, wares or merchandise—on conviction thereof shall be fined, etc."

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Williams & Richardson (Charles A. Collin and William M. Parke, of counsel), for plaintiffs in error.

Henry A. Wise, U. S. Atty. (Felix Frankfurter, Asst. U. S. Atty., of counsel), for the United States.

Before LACOMBE, WARD, and NOYES, Circuit Judges.

LACOMBE, Circuit Judge (after stating the facts as above). The defendant acquitted was chief clerk to the deputy surveyor. The dead man and the two plaintiffs in error were United States weighers. There were five weighing districts in the port, with a weigher in charge of each. It was a part of the duties of each weigher to assign the different assistant weighers in his district to the various piers and places where the weighing of imported merchandise was done. It was also the weighers' duty to oversee the work of the assistant weighers, to inspect their "dock books," and themselves to prepare from the data therein contained the official "weigher's returns" on which customs duty was to be liquidated.

It was proved beyond the possibility of a doubt that for a long period of time there was a conspiracy between certain dishonest importers and certain corrupt assistant weighers to make false returns of the weights of such importers' goods. In return for such fraudulent reports the importers were to pay and did pay to these government servants whom they had thus debauched large sums of money as the wages of their corruption. No one disputes the existence of such conspiracy. No one contends that it was not carried out for years to the great loss of the government.

So far as these defendants are concerned, it was the contention of the government that they had knowledge of this conspiracy and participated in it; that they so arranged the assignments of the assistant weighers that it was always possible for a crooked importer to secure a weighing of his importations by a crooked assistant weigher; and that the assistant weighers who received money from such importers in payment for their criminal acts divided the money thus received with the weighers who assigned them to duty at places where it was possible for them to earn these bribes. The truth of these charges was denied by defendants.

The indictment contained three counts. The first charged a conspiracy by defendants with divers other persons that they should defraud the United States of its lawful duties on certain importations and should collect money for so doing; that they should assign assistant weighers whom they knew to be corrupt and dishonest with the intention that these should collude with corrupt and dishonest importers to have false records or weights made in the dock books, which false records defendants should knowingly sign and file in the customhouse; and that the conspirators should receive money from the dishonest importers for so doing.

The second count charged a conspiracy with other persons to defraud the United States of its customs duties by causing, in return for payments of money, the filing in the customhouse of dock books

and official returns which were to contain false statements of the weights of imported merchandise.

The third count charged a conspiracy with other persons to solicit, demand, exact, and receive for defendant's own private gain, and not for lawful duties and fees, from corrupt and dishonest importers large sums of money in return for signing and filing in the custom-house docks books and weigher's returns, which were to contain false and fraudulent under-statements of weights.

[1] Manifestly the three counts relate to the same transaction and the same set of facts. The different counts state those facts in different forms, according to the customary practice of criminal procedure. The indictment presented a single charge and the jury were asked so to consider it. Defendants were charged with guilty participation in a conspiracy to defraud the government in the manner set forth and to exact and receive payment from their co-conspirators for such participation. Numerous overt acts were charged, receipts of money from corrupt assistant weighers and also directly from employés of the corrupt importers—such money being referred to on the trial as "house money," in contradistinction to the amount of such money which the assistant weigher was said to have divided with his superior. Other overt acts charged were the assignment of the different corrupt assistant weighers to duty as weighers of particular enumerated cargoes; also the signing of certain specified weigher's returns and dock books. There were 50 of these overt acts alleged (the same 50 under each count), all separately stated and numbered. Two of them read as follows:

"21. That in pursuance of said conspiracy and in order to effect the object thereof, on the 1st day of May, 1907, at the Eastern District of New York, said Charles D. Drew did receive $50 from Thomas S. Doyle, who was then and there an employé of the firm of Arbuckle Bros., importers of raw sugar from foreign countries into the port of New York."

"46. That in pursuance of said conspiracy, and in order to effect the object thereof, on the 1st day of September, 1907, at the Eastern District of New York, said Charles H. Wardell did receive from Thomas S. Doyle, who was then and there an employé of the firm of Arbuckle Bros., importers of raw sugar, the sum of $50."

The verdict was:

"We find George E. Bedell not guilty. We find Charles D. Drew guilty of overt act No. 21 only. We find Charles H. Wardell guilty of overt act No. 46 only."

This verdict is inartificial, and it is now contended that it was not a verdict of guilty of the offense of conspiracy charged in any of the three counts; but was, in effect, a verdict of not guilty of all the offenses of conspiracy charged in all the counts.

Before discussing the question thus presented, it may be noted that, when the verdict was rendered, it seems not to have occurred to any one that it was ambiguous or incomplete, or so framed as to call for further elucidation of their meaning by the jury. This circumstance, although not controlling, is significant. The cause was tried by an able and careful judge, having exceptionally wide experience during many years in criminal causes as trial judge, as district attorney, and

as counsel for defendants. The district attorney and his assistant were able and experienced lawyers who, as we know from other records, are extremely careful of the minuter details of the trials in which they participate. Counsel for defendants were also able and experienced lawyers, one of them an ex-assistant district attorney. To none of them did it occur when they heard this verdict that anything further was required from the jury to complete their finding of "guilty." The court made no inquiry of the jury nor asked them to paraphrase their finding; nor did the prosecution request that this be done. Counsel for Drew asked that the jury be polled, which was done, and they were then discharged. When defendants were brought up for sentence nearly three months later, the point now under discussion was presented in support of a motion in arrest of judgment. Apparently there was something in the atmosphere of the case, something in the situation and conditions under which the verdict was rendered which made its meaning clear to all who had participated in the trial. A careful study of the record has satisfied us that the verdict was not incomplete or obscure; that the jury intended to find, and did in fact find, each of these two defendants guilty of the charge of conspiracy.

The verdict was not a hasty one. The jury was charged on a Friday. They came into court on that afternoon, and asked for the reading of the evidence of two witnesses pertaining to overt acts numbered 2, 12, and 13 as to George B. Bedell. This was done. They also asked for the judge's charge which had by that time been transcribed. They returned on Saturday morning, stating that they could not agree. After some further instructions, they withdrew and rendered their verdict about noon of that day.

They had the indictment with them in the jury room. The record does not so state, but it was so stated in the argument, and the statement was not disputed. The reference by number to specific overt acts in their request supra and in the verdict indicates very clearly that the indictment was before them. In the light of the indictment and of the charge, they undertook to state in writing the conclusions they had arrived at from the proofs.

In Statler v. U. S., 157 U. S. 277, 15 Sup. Ct. 616, 39 L. Ed. 700, the court cites with approval from Bishop's Criminal Procedure as follows:

"The words (of a verdict) being the finding of lay people need not be framed under the strict rules of pleading, or after any technical form. Any words which convey the idea to the common understanding will be adequate. And all fair intendments will be made to support it. To say, therefore, that the defendant is 'guilty' or guilty of an offense named, which is less than the whole alleged, is sufficient without adding 'as charged in the indictment,' for the latter will be supplied by construction. So likewise a general finding of guilty will be interpreted as guilty of all that the indictment well alleges. The verdict must be construed as whole, not in separate parts."

The charge was very clear and expressed in plain language. It was quite short, and we must assume that the jury understood it and remembered it, even if they did not have a copy of it in the jury room, as it seems probable that they had. The jury were instructed

that the offense charged was the entering into a conspiracy; that no substantive crime was charged, except conspiracy; that the receipt of "house money," so called, was only material as bearing on the main charge; that to convict any of the defendants the evidence must show that there was a conspiracy to defraud the government; and that the defendants participated in it with knowledge of its existence. They were instructed more than once that participation in the conspiracy without knowledge of its existence or knowledge of the conspiracy without participation in it were not enough; that it was their duty to convict only if defendants knew of the conspiracy to defraud and in furtherance of it did aid, abet, counsel, or advise. In the discussion which followed the charge they were expressly told (it was almost the last thing they heard before they retired) that the indictment did not charge defendants with the receipt of house money, but with a conspiracy as to underweighing and that alone. As to overt acts they were instructed that one overt act by one conspirator was enough as to that one. It is certainly reasonable to suppose that, if they all agreed as to the commission of one overt act by one of the defendants, they would not consume further time discussing the question of the commission of other overt acts by the same person. But, whether this supposition be reasonable or not, it is manifest that they did agree as to the commission of one overt act by Drew and one by Wardell. Having done this, they proceeded to frame their verdict, and, having the indictment before them with its elaborate charge as to each of these overt acts, they naturally supposed that a finding of guilty of that particular charge would cover all the points submitted to them, viz., conspiracy, knowledge of it, participation in it, and the commission of the particular overt act in aid. We must read the finding in the light of the indictment which was before them when they formulated such finding. In the case of Drew they manifestly intended to find—and a plain common-sense construction of their verdict indicates that they did find—not only that Drew received $50 from Doyle, but that Doyle was an employé of Arbuckle Bros., importers of raw sugar into the port of New York, and that Drew received the $50 "in pursuance of said conspiracy [the one alleged in the indictment] and in order to effect the object thereof." Doyle might have paid money in pursuance of the conspiracy and to effect its object, without the payee having knowledge of a conspiracy or participating in it. But Drew could not possibly have received "in pursuance of the conspiracy and in order to effect its object," without knowing of the conspiracy and participating in it. The finding as to Wardell must be similarly construed. We are satisfied that the verdict found both defendants guilty of the conspiracy charged in the indictment.

[2] The only other assignment of error which has been argued is to the refusal of the court to strike out the answer of one of the witnesses. The witness Hyland was one of the self-confessed conspirators who underweighed cargoes, made false entries of weights, and received money from the crooked importers for doing so. He had testified on cross-examination by counsel for Wardell that at one

time Wardell gave him $1,200 of which he handed back to him $300. Thereupon the cross-examination continued as follows:

"Q. Just tell this jury, without talking so much, where you got the money from Mr. Wardell, how long you kept it before you turned this $300 back to him. A. At various times after the 15th of December Mr. Wardell collected from the weighers on the dock this money.

"Q. You did not see him collect any from the weighers? A. No, sir."

Thereupon counsel for Wardell moved that the answer to the first of these questions be struck out, which was denied and exception reserved. The motion should have been granted. Apparently the trial judge got the impression from something said by counsel that the only objection raised was that the answer was not responsive. The real vice of the answer was indicated by the answer to the second question, which showed clearly that the answer the witness had volunteered contained a statement as to which he had no personal knowledge whatever.

[3] The assignment of error being well taken, the only question to be determined here is whether it was prejudicial error. "The modern tendency, both of legislation and of the decision of courts, is to give as wide a scope as possible to the investigation of facts. Courts of error are especially unwilling to reverse cases because unimportant and possibly irrelevant testimony may have crept in, unless there is reason to think that practical injustice has been thereby caused." Holmes v. Goldsmith, 147 U. S. 150, 13 Sup. Ct. 288, 37 L. Ed. 118; Williamson v. U. S., 207 U. S. 451, 28 Sup. Ct. 163, 52 L. Ed. 278.

This witness, as we have said, was one of the corrupt assistant weighers; indeed one of the most shameless of them. Of the other corrupt assistant weighers, Cogan testified that he paid some of the money he received from the importers to Drew and some of it to Wardell. Quigly testified to the same effect; so did Sawyer. Parker testified that he made similar payments to Drew; Quinn, Stern, Brehn, and Braddel that they made similar payments to Wardell. These witnesses all testified to actual payments made by themselves, to facts within their personal knowledge. They were confessedly criminals, and the jury might disbelieve their testimony, but to contend that any prejudice resulted to either defendant because another man of equally bad character said that one of the defendants divided with the corrupt assistant weighers, when in the very next answer he admitted that he did not know anything about it, seems to us an entirely unreasonable proposition.

The judgment is affirmed.