## UNITED STATES v. DI MATTEO.

### No. 9665.

Circuit Court of Appeals
Third Circuit.
Argued June 24, 1948.
Decided Aug. 20, 1948.

J. Harry Pershing, of Pittsburgh, Pa. (Adam B. Shaffer, of Pittsburgh, Pa., on the brief), for appellant.

W. Wendell Stanton, of Pittsburgh, Pa. (Owen M. Burns, U.S.Atty., of Pittsburgh, Pa., on the brief), for appellee.

Before BIGGS, McLAUGHLIN, and O'CONNELL, Circuit Judges.

BIGGS, Circuit Judge.

The defendant, Andrew J. DiMatteo, was charged in an indictment of two counts with having in his possession a $25 United States War Savings Bond, registered in the name of Cabeen and (First Count) with counterfeiting Cabeen's endorsement on the bond in order to cash it; and (Second Count) with cashing the bond, knowing the endorsement to be forged. See Section 29 of the Criminal Code, 18 U.S.C.A. § 73.

The proof in the case was simple and direct and, if believed by the jury, was quite sufficient to prove the guilt of the defendant on both counts. There was testimony to the effect that the defendant had access to the room and to the place where the bond was kept by Mrs. Cabeen in Cabeen's absence, that the defendant procured a prominent citizen of Uniontown to identify him as the owner of the bond to a bank,[1] that he forged Cabeen's endorsement on the bond, and that the bond was cashed at the bank. The charge of the

[1] The witness did this by pencilling his own name on the margin of the bond, apparently being unaware of the fact that DiMatteo was not Cabeen.

court was clear and to the point as far as it went, but that it was deficient in one respect is demonstrated by the jury's actions and verdict.

After retiring to consider the verdict the jury became confused, sent a note to the learned trial judge, [2] and finally returned with the following verdict which was duly recorded: "And now, to wit, December 9, 1947, we the jurors impaneled in the above entitled case find Andrew J. DiMatteo guilty of forgery, recommend to the mercy of the Court, and not guilty of the theft of the bond." The trial judge immediately said to the jury: "Ladies and gentlemen of the jury, you sent a note down to me that indicates that you are trying to function—assume to yourselves the function of the Court. This Court has the duty of sentence. There is no case in which sentence is mandatory on the Court; it is not required to send anybody to prison by reason of it, because it can place him on probation. But I will say this to you: *That this verdict is laughable to the Court because the one question—the one that you might reasonably have found him not guilty was in regard to passing that particular forged item;* but the main testimony in the case—all of the testimony in the case, [is] to the effect that he had stolen the bond. So that, as I say, you are simply transposing the result, and you apparently are doing it in an attempt to assume the functions of the Court in regard to it, with which you have nothing whatsoever to do. You are sworn to well and truly try the issues of fact; and the issues of fact are whether or not he stole that bond [3] and also whether he succeeded in forging it and securing the payment of it. Now, I confess that if I were counsel for the Government in these cases I would not allow any one of you to sit on the jury again. That, however, is only the opinion of the Court. You may now go to your jury room. *I think you didn't understand this case at all,* I will say that." [4]

The defendant moved in arrest of judgment and for a new trial. These motions make reference to the fact that the jury found the defendant, to quote the language of the verdict, "* * * not guilty of the theft of the bond". On January 19, 1948 the motions were denied and on January 20 the defendant was sentenced to imprisonment for a year and a day and to pay a fine of $1. Just prior to sentence the attorney for the United States stated to the court: "* * * to clarify the record, I would like to move that judgment be entered on the first count of the indictment, upon which this defendant was convicted and that the second count of the indictment be dismissed, the latter for the reason that the jury failed to return any verdict as to it." The court replied, "Of course, under those circumstances, as to that count, there could be no conviction in the future at any rate for it. However, the motion is granted."

 The charge of the learned judge was insufficient in that he did not direct the jury to return a verdict on each count of the indictment. If he had done so it is conceivable that the jury would not have returned their verdict as an inaccurate and insufficient hotchpotch. The jury could have returned clear-cut verdicts on both counts. That portion of the verdict which states that the defendant was "not guilty of the theft of the bond" was irrelevant for he had not been indicted for stealing the bond. The desirability and even the necessity of requiring a jury to return a separate verdict on each count of an indictment was dealt with by this court in United States v. Crescent-Kelvan Co., 3 Cir., 164 F.2d 582, 589.[5] In the opinion in that case we said that "* * * where there are separate counts in an indictment or information, there must be separate verdicts by the jury, under proper instructions from the court, as to the guilt or innocence of * * * [the] defendant on each count if a judgment of conviction is to

---

[2] The note is not a part of the record and it does not appear what was in it except as reflected in Judge Gibson's comments as quoted in this opinion.

[3] This was an erroneous statement. Whether the defendant stole the bond was not an issue.

[4] Emphasis added.

[5] It should be pointed out that our decision in United States v. Crescent-Kelvan Co. was handed down on January 26, 1948, nearly two months after the trial in the case at bar.

stand where there is error in the record affecting one or more of the counts." Obviously in every case where there are two or more counts in an indictment, proper practice will require the jury to render a separate verdict on each count.

The first count of the indictment in the instant case may be designated as a "forgery" count if nomenclature be colloquial. The jury probably meant to find the defendant guilty on the first count. We could perhaps rule that the jury returned a verdict of "guilty" on the first count. But a defendant on trial on an indictment in a court of the United States is entitled, if judgment of sentence is to be imposed on him, to have his guilt found by a jury directly and specifically, and not by way of possible inference.

The confusion in the case at bar is exemplified by the motion "to clarify the record" made by the United States' attorney prior to the imposition of sentence and by the reply of the court when it granted that motion. While the motion was one purportedly made to clarify the record, what transpired in substance was that the court itself rendered a verdict of "guilty" on the first count and a verdict of "not guilty" on the second count. The court was without authority to grant the motion for in doing so it usurped the function of the jury in violation of the Third Article and the Sixth Amendment of the Constitution of the United States which guarantee trial by jury to the defendant. The confusion is further illustrated by the fact that the court below apparently was of the opinion that the verdict of the jury perhaps was intended to go to both counts for he stated that "there could be no conviction in the future * * *" on the second count. The trial judge obviously was of the opinion that a plea of autrefois acquit might lie if the defendant was brought to trial again on the second count.

With this view we cannot agree for actually the verdict did not and could not go to the second count.

What we have said is sufficient to justify a reversal of the judgment of conviction. But there is another substantial error in the record. The trial judge stated to the jury on its return with the verdict that the verdict was "laughable" [6] and also said, "I think you didn't understand this case at all * * *". Despite these characterizations of the verdict voiced immediately on the return of the jury the court below ten days later denied the motions for arrest of judgment and for a new trial. The motions do not raise directly any question respecting the jury's lack of understanding of the case but did so very indirectly, by inference as indicated above. For this reason it may not be plausibly asserted under the circumstances of the case at bar, that by denying the motions the court rejected its earlier characterizations of the verdict. We must agree with the observation made by the trial court that the jury did not understand the case at all for that fact is demonstrated clearly by the record. Moreover, when an experienced trial judge, declares that a jury returning a verdict to him did not understand the case at all that fact alone necessitates a new trial. A defendant on trial is entitled to a jury which at least, or at worst, possesses sufficient understanding of the circumstances of the case to return a pertinent, adequate and coherent verdict.

Last there is error which goes to the judgment of sentence rather than to the judgment of conviction. Despite the fact that the trial judge granted the motion made by the attorney of the United States to clarify the record, in the "Judgment and Commitment" he stated that the defendant had been found guilty on both counts of the indictment and sentenced him on both counts, albeit to a single sentence. We may assume that this error was inadvertent but it lies clearly in the record and we may not overlook it.

The judgment of conviction will be set aside and the case will be remanded with the direction to grant a new trial.

---

[6] Judge Gibson obviously used the adjective in a sardonic sense and did not regard the verdict as one which should inspire pure hilarity.