Comer BLOCKER, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 17346.

United States Court of Appeals
District of Columbia Circuit.

Argued May 23, 1963.

Decided July 3, 1963.

See also 110 U.S.App.D.C. 41, 288 F.2d 853.

Mr. James J. Bierbower, Washington, D. C. (appointed by this court) for appellant.

Mr. Max Frescoln, Asst. U. S. Atty., with whom Messrs. David C. Acheson,

U. S. Atty., Frank Q. Nebeker and Frederick G. Smithson, Asst. U. S. Attys., were on the brief for appellee.

Before BAZELON, Chief Judge, and FAHY and WASHINGTON, Circuit Judges.

BAZELON, Chief Judge.

Appellant was indicted for first degree murder, found guilty by a jury of second degree murder, and sentenced to life imprisonment with a minimum sentence of ten years.

■ At trial the defense of insanity was raised. A psychiatrist and two psychologists testified that appellant was psychotic and that there was a causal relationship between his mental condition and the alleged crime. A second psychiatrist testified that appellant was "suffering from sociopathic personality disturbance, alcohol addiction" which was not related except "by a number of removes" to his alleged crime. And a third psychiatrist testified that he "did not find evidence of mental disease" in appellant. The insanity issue was thus properly for the jury, which decided it adversely to appellant.

■ In this appeal appellant attacks the trial court's instruction regarding the burden of proof on the issue of insanity, which was not objected to below. The relevant portions, however, convey the correct rules. Thus the matters about which appellant complains do not affect his substantial rights under Rule 52(b), Fed.R.Crim.P.

There are two additional aspects of the instruction which, although not objected to either at trial or on appeal, and not grounds for reversal under Rule 52 (b), Fed.R.Crim.P., warrant discussion in the interest of the proper administration of the insanity defense in the District of Columbia.

■ The trial court gave an instruction on insanity which emphasized such labels as abnormality, deficiency, defect, disorder and disease.[1] Shortly after the trial of this case, we decided McDonald v. United States, 114 U.S.App.D.C. 120, 312 F.2d 847 (1962), and observed that medical labels may or may not be relevant to the jury's task of determining criminal responsibility. While some reference to medical labels may be unavoidable, an instruction should avoid any implication that the accused's responsibility turns exclusively on the label attached to his condition by the medical profession or the authors of diagnostic manuals. The jury should be instructed that for purpose of criminal responsibility "a

1. The insanity instruction, in pertinent part, was as follows:

"In order to be responsible for his acts, a person must have the mental capacity to commit the act with which he is charged. It is not, however, in every case in which the accused is suffering from some *mental abnormality* or some *mental deficiency* or *defect*, or from some *mental disorder* that he is to be deemed free from liability for his crimes and not responsible for his acts. There are many abnormal persons or many persons with *mental deficiencies* or persons suffering from *personality disorders* or *mental disorders*, whom the law holds responsible in certain instances for a crime that such a person may commit.

"Obviously, there are good reasons for this. However, there are certain types of persons afflicted with *mental disease* and *mental defects* that are not held responsible for particular crimes. If this defendant was suffering

from some *mental disease* or from some *mental defect*, or, to put it another way, from a *diseased or defective mental condition* at the time when the crime was committed and, further—and this is very important— if the crime itself was the product of that *mental disease* or *mental defect* then, and only then, the defendant is not responsible for his criminal act.

"I have used the terms *'mental disease'* or *'mental defect'* and I shall distinguish between the two for you. A *mental disease* is a deranged or abnormal mental condition which is considered capable of either improving or deteriorating. A *mental defect* is a deranged or abnormal mental condition which is not considered capable of either improving or deteriorating and which may be either congenital or the result of an injury or the residual effect of a physical or mental disease." [Emphasis supplied.]

mental disease or defect includes *any* abnormal condition of the mind," regardless of its medical label, "which substantially affects mental or emotional processes and substantially impairs behavior controls." McDonald v. United States, supra at 851, emphasis supplied.

■■ The trial court also instructed the jury:

"In considering the defense of insanity, you have a right to consider whether he knew the difference between right and wrong, whether he acted under the compulsion of an irresistible impulse or had been deprived of or lost the power of his will."

As this court again made clear in McDonald v. United States, supra, ability to distinguish right from wrong "is not an accurate statement of the test for criminal responsibility in this Circuit. * * [T]he jury may be instructed, *provided there is testimony on the point,* that capacity, or lack thereof, to distinguish right from wrong * * * may be considered in determining whether there is a relationship between the mental disease and the act charged. * * * These considerations are not to be regarded in themselves as independently controlling or alternative tests of mental responsibility in this Circuit." (Id. at 851–852, emphasis supplied.) Also see Douglas v. United States, 99 U.S.App.D.C. 232, 239 F.2d 52 (1956); Campbell v. United States, 113 U.S.App.D.C. 260, 307 F.2d 597 (1962). It has been long observed that man is an integrated personality in which reason is but one element. If this element is impaired to such a degree that ability to distinguish right from wrong no longer exists, the accused should not be held criminally responsible, for it could not then be found beyond a reasonable doubt that his alleged crime was not a product of this impairment.[2] But the fact that reason is not impaired to that degree means no more than that the accused did not display one "particular symptom * * * which medical science has long recognized [does] not necessarily, or even typically, accompany even the most serious mental disorder." Durham v. United States, 94 U.S.App.D.C. 228, 242, 214 F.2d 862, 876, 45 A.L.R.2d 1430 (1954).

■ In this case there was a proper evidentiary foundation for the trial court to tell the jury that it could consider the defendant's capacity to distinguish right from wrong. One psychiatrist testified as follows: "I seriously doubt that [defendant] knew right from wrong before and during this period of time of 20 hours or so before the act, I believe he had a lingering—perhaps he was in a struggle in which he had some lingering knowledge of right from wrong but mostly he was out of control during this time." This apparently was the only testimony on right and wrong. The trial judge should therefore have instructed the jury that, if they believed that defendant committed a criminal act but that he did not know right from wrong, they should conclude that his act was a product of a mental disease or defect.[3] But the judge should also have instructed them that, even if they believed that defendant did know right from wrong, they could still find, on the basis of other evidence,[4] that defendant's alleged act was a product of a mental disease or defect, which of course, is the only ultimate test of criminal responsibility in this Circuit.

Affirmed.

---

2. See Wright v. United States, 102 U.S. App.D.C. 36, 44, 250 F.2d 4, 12 (1957).

3. Ibid.

4. "[T]he jury's range of inquiry is not to be limited to particular symptoms, but may include, under proper instructions, any symptoms and manifestations of mental disorder. Durham v. United States, supra, 94 U.S.App.D.C. at page 235, 214 F.2d at page 869; cf. Douglas v. United States, 1956, 99 U.S.App.D.C. 232, at page 238, 239 F.2d 52 at page 58." Misenheimer v. United States, 106 U.S.App. D.C. 220, 271 F.2d 486 (1959), cert. denied, 361 U.S. 971, 80 S.Ct. 603, 4 L.Ed. 2d 550 (1960).