**UNITED STATES of America,**
**Appellee,**

v.

**Richard Kenneth SCHMIDT, Appellant.**

**Nos. 10630, 10631.**

United States Court of Appeals
Fourth Circuit.

Argued March 6, 1967.

Decided May 2, 1967.

Frank W. Smith, Jr., Richmond, Va. (Court-appointed counsel), for appellant.

Wm. Medford, U. S. Atty. (James O. Israel, Jr., Asst. U. S. Atty., on brief), for appellee.

Before HAYNSWORTH, Chief Judge, WINTER, Circuit Judge, and HARVEY, District Judge.

WINTER, Circuit Judge:

Defendant was tried on a three-count indictment charging him with robbing the Denver, North Carolina Branch of the First National Bank of Lincolnton (the Denver case), and found by the jury "Guilty as charged." Before sentencing on this verdict, defendant pleaded guilty to the third count of another indictment charging armed robbery of the Claremont Branch of the First National Bank of Catawba County, North Carolina (the Claremont case), which had been returned in the Statesville Division of the Western District of North Carolina, and transferred to the Shelby Division, with defendant's consent, under the provisions of former Rule 19, Fed.R.Crim.P. Defendant was sentenced to twenty years in each case, the sentences to run concurrently.

Defendant appeals from both judgments, contending that there was prejudicial error in his conviction in the Denver case, and that his plea of guilty in the Claremont case was involuntary, in that it was induced and coerced by the district judge. We reverse both convictions and award defendant new trials.

Count 1 of the indictment in the Denver case charged bank robbery by force and violence and by intimidation, on or about July 2, 1965, in violation of 18 U.S.C.A. § 2113(a). The second count charged larceny of $9,121.00, in violation of 18 U.S.C.A. § 2113(b), and the third, armed bank robbery, in violation of 18 U.S.C.A. § 2113(d). By the terms of § 2113, the maximum penalty which could be imposed upon conviction of the first count was twenty years; the second count, ten years; and the third count, twenty-five years.

Defendant assails his conviction in the Denver case on the grounds that the district judge improperly denied a motion for continuance, that the district judge improperly denied a request for a psychiatric examination, that the district judge

prejudicially failed to instruct the jury on the elements of the offenses charged in the counts of the indictment submitted to them, and that the verdict of the jury was fatally defective, since it failed to specify the count or counts of which defendant was found guilty. As part of his last ground of attack, defendant also contends that he may not be retried without violation of his constitutional right against double jeopardy since, he contends, the verdict of the jury must be treated as an acquittal of all of the charges made against him.

■ The claim that there was error in the district judge's failure to instruct the jury as to each element of the offenses charged in the Denver case indictment rests upon the undisputed fact that the district judge did not so instruct, and our decision in United States v. Harris, 346 F.2d 182 (4 Cir. 1965). In the *Harris* case, we stated that "In every criminal prosecution * * * an exposition of the constituents of the offense is mandatory and indispensable." Id., at p. 184. Earlier, in United States v. Hutchinson, 338 F.2d 991 (4 Cir. 1964), we pointed out that the duty of the district judge to instruct as to the elements of an offense charged in the indictment is not conditioned upon a request of counsel for such an instruction; the duty exists "whether requested or not." Id., at p. 991.

■ We adhere to those views in this case, but it does not follow that defendant's conviction in the Denver case should be reversed on this ground. Not only did his then counsel fail to request the district judge to instruct on the constituent elements of bank robbery, larceny and armed bank robbery—an omission not fatal under *Hutchinson*—his then counsel lodged no exception to the failure of the district judge so to instruct, although ample opportunity to register such an exception was afforded. Error there was, but we believe on the record before us that it was harmless error, and not plain error, within the meaning of Rule 52, Fed.R.Crim.P. Cf.,

Chapman v. State, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (February 20, 1967).

An examination of the transcript makes it clear that the only substantial issue submitted to the jury was an issue of identification. Two bank tellers and two bank customers testified, all to the effect that the bank had been robbed, and that the robber had worn a dark blue suit, sunglasses and a dark hat pulled down on his face; all four identified defendant as the robber. While their testimony differed as to the use of a weapon, defendant's counsel presented no defense testimony and was constrained to tell the jury in final argument "I will concede, and I think we all know, that the bank was robbed. Whoever did it did something he should not have done and he should be punished for it. I will concede that these people saw a man in there with dark hart [sic] glasses and two paper bags and a gun. I will not concede that it was Dick Schmidt that they saw coming there." In this context, we cannot conclude that defendant's rights were so prejudiced by the district judge's failure to instruct in regard to the elements of the crimes that we should notice the error. The district judge, on retrial of the case, which we conclude is required for a different reason, will, of course, properly instruct in accordance with our decisions in *Harris* and *Hutchinson*.

■ The fatal error in defendant's conviction in the Denver case springs from what the district judge did tell the jury, and the form of verdict which was returned and accepted. The district judge read the three-count indictment to the jury and, in connection with each count, read the portion of 18 U.S.C.A. § 2113 upon which it was based. After a bench conference between all counsel, the district judge concluded:

"(The Court) Ladies and gentlemen of the jury, in summing up this case, I might call to your attention the fact that there are three counts in the bill of indictment, Count 1, Count 2, Count 3, but that *one is predicated upon another,* and *that you would convict, if*

*you would convict, on any one count rather than on all three of the counts for that they are each more or less explanatory of the other,* all leading up to and arising from one alleged offense; so the verdict that you would return in the event you are satisfied of the defendant's guilt and beyond a reasonable doubt would be a verdict of guilty as charged. If you are not so satisfied, you would return a verdict of not guilty." (emphasis supplied)

When the jury indicated that it had concluded its deliberations, the following return was made:

"(Deputy Clerk Bartlett) Ladies and gentlemen of the jury, have you reached a verdict in the case and have you designated a foreman?

(Jury Foreman) Yes sir. I am the foreman.

(Deputy Clerk Bartlett) Do you find the defendant Richard Kenneth Schmidt guilty or not guilty?

(Jury Foreman) *Guilty as charged.*

(Deputy Clerk Bartlett) This being the unanimous opinion of your whole body, so sayeth all of you?

(The Jury) Yes sir." (emphasis supplied)

The jury was polled, but not asked to clarify its verdict.

Thus, the district judge told the jury that it should return only one verdict. Apparently the district judge was adverting to the merger of Count 2 into Count 1, which would have occurred had defendant been found guilty of both, or the merger of Counts 1 and 2 into Count 3, had the defendant been found guilty of all three. But the thought was incompletely expressed and, in effect, the jury was told that if it found the defendant guilty of any single count it need not consider the other counts. From the jury's return, which was in the form invited by the district judge, it is impossible to say of which count defendant was found guilty. Determination of which count he was found guilty is crucial, because the sentence imposed was exactly double that permitted for conviction of Count 2 if,

in fact, Count 2 was the count of which defendant was found guilty. The manifest uncertainty of the results of the jury's deliberations requires that its verdict and the judgment entered thereon be set aside and defendant afforded a new trial.

The government urges on us the argument that the jury's verdict must relate to Count 3—the charge of armed bank robbery—but that in any event defendant should not be heard in this contention because of the failure of his counsel to lodge an objection, in accordance with Rule 30, Fed.R.Crim.P., to the portion of the judge's charge we have quoted. We reject these contentions.

Of the four eyewitnesses to the robbery who testified at the trial, one testified that the robber pulled a gun out of his coat and pointed it at the witness during the entire robbery; another swore the gun had remained in the robber's coat but that the butt had protruded from a pocket; a third denied seeing any gun at all; and the fourth was not asked about a gun by the prosecutor. It cannot be said from these variations in the testimony that guilt if found *must* have been guilt of armed bank robbery. Similarly, in the absence of any explanation by the district judge of the elements of "by force and violence" and "by intimidation," other than the bare allegations of the indictment and the words of the statute, it cannot be said that guilt, if found other than by armed bank robbery, *must* have been guilt of bank robbery by force and violence or intimidation.

We conclude that under Rule 52, supra, we should notice the plain error in the district judge's final instructions. True, defendant's then counsel lodged no objection thereto, but the record discloses that the bench conference for the purpose of lodging objections to the charge occurred before the fatal comments, and the record does not disclose that counsel were afforded an additional opportunity to lodge objections to what was said after the bench conference.

Defendant's claim of double jeopardy is grounded upon Green v. United States,

355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199, 61 A.L.R.2d 1119 (1957). In substance, it is that since it is impossible to determine on what count or counts defendant may have been found guilty, it is equally impossible to determine upon what count or counts defendant may have been acquitted, but silence as to any count in a multicount indictment is an implicit acquittal on that count.

■ We think the *Green* case inapposite. In *Green*, the defendant was tried on a three-count indictment charging him with arson, murder in the second degree and murder in the first degree. As between degrees of murder, the jury was told he could be convicted of either degree, and the jury found him guilty of murder in the second degree, which the court held operated as an implied acquittal of the charge of first degree murder. In the case at bar, the invalidity of defendant's conviction rests in the fact that it cannot be determined of which count defendant was found guilty, so that it cannot be determined of which count or counts he may have been found not guilty. More importantly, as we read the concluding words of the charge of the district judge, the jury was told that if they found defendant guilty of one count they need not return any verdict on the other counts. In the light of such an instruction, we cannot treat the jury's silence as to other counts as an implied acquittal.

Because of this conclusion we need not express any view as to whether the district judge improperly denied defendant's motion for a continuance. The motion was filed *pro se* and, based upon the assertion that counsel had not been appointed for defendant sufficiently prior to trial to afford counsel an adequate opportunity to present a defense. If any of defendant's rights were violated by denial of the motion, the prejudice will have been redressed prior to the new trial. Defendant has enjoyed the most effective discovery available—hearing the government's case presented against him—and, undoubtedly, he will be afforded a reasonable opportunity to prepare his defense before retrial is scheduled.

■ We find no merit in defendant's contention that there was error in the district judge's refusing to order a pretrial psychiatric examination, also requested in the *pro se* motion for continuance. The fact is defendant was charged with a third bank robbery in Athens, Georgia, and, in that case, immediately prior to his motion for psychiatric examination in the Denver case, he had been subjected to a psychiatric examination. As a result of that examination, a report of which was before the district judge, it was found that there was no impairment of defendant's intellectual functions and no psychotic condition or insanity. Indeed, the examiner concluded that defendant showed no evidence of psychosis or insanity either at the time the examination was made, or in the past. Absent any other factor, and there is none,* to indicate a possible contrary conclusion, the district judge did not abuse his discretion in refusing to order a second psychiatric examination.

■ Sentencing in the Denver case occurred the day after the jury's verdict of guilty, but before defendant was sentenced in the Denver case he pleaded guilty in the Claremont case, which was transferred to the Shelby Division for simultaneous disposition. The record is clear that the plea of guilty in the Claremont case was coerced and otherwise improperly induced by the district judge.

*Inter alia,* the district judge in open court prior to the time that defendant tendered a plea of guilty, told defendant that he had read about the Claremont case in the newspaper and " * * * I made some further inquiry and that case develops to be an open and shut case." The district judge described some of the

---

* Defendant attacked the completeness of the Georgia psychiatric examination. At defendant's request, the district judge had produced at the trial defendant's cellmate from Georgia, who purportedly would testify in this regard. Defendant did not call him as a witness.

evidence which the government would offer if the Claremont case were to be tried, he adverted to the third Georgia bank robbery case, and told the defendant that there was "* * * a very strong kidnapping case" against the defendant arising out of the Georgia bank robbery. He also said that there could be a kidnapping charge arising out of the Claremont case. He then told the defendant "* * * you have a right thorny path to follow" and that "* * if you would go through the full row and be prosecuted * * * then you would never be free from confinement." Following these pointed remarks, the district judge made the "suggestion" that the defendant not appeal the Denver case, and that he consent to have the Claremont case transferred and disposed of, together with the Denver case.

If this were not enough, after the "suggestion" had taken hold and defendant, after conferring with counsel, concluded to consent to the transfer of the Claremont case, to plead guilty and to urge that the court make his sentences concurrent, the district judge said, "I think that is the part of wisdom, taking into consideration what the boy's future is, because unless he gets something done he has a very dark outlook on life. There is not any question about that." Again, the district judge told counsel that the Claremont case was "* * * just an iron-clad open and shut case, and, of course, this one [the Denver case] likewise was. I assume the one in Athens is probably stronger." Following these last slanted comments, defendant was allowed to execute the formal consent to transfer the Claremont case and to enter a plea of guilty.

Citation of authority is unnecessary to demonstrate the involuntariness of the plea, as well as the involuntariness of the consent to transfer the Claremont case. We deplore the remarks and the injudicious way in which the proceeding was conducted.

Both judgments are reversed and new trials granted.

Reversed.