**Kay F. GLENN, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

**No. 22162.**

United States Court of Appeals
District of Columbia Circuit.

Argued March 20, 1969.

Decided July 23, 1969.

Mr. Michael Ritz, Jr., Washington, D. C. (appointed by this court), for appellant.

Mr. Thomas C. Green, Asst. U. S. Atty., with whom Messrs. David G. Bress, U. S. Atty., at the time the brief was filed, and Frank Q. Nebeker, Asst. U. S. Atty., at the time the brief was filed, were on the brief, for appellee.

Before BAZELON, Chief Judge, and WRIGHT and ROBINSON, Circuit Judges.

---

**SPOTTSWOOD W. ROBINSON, III, Circuit Judge:**

Appellant was placed on trial before a jury in the District Court on a single count of housebreaking.[1] The jury, instructed on the elements of housebreaking and of unlawful entry[2] as a lesser included offense,[3] rejected appellant's insanity defense, returned a one-word verdict of "guilty," and this single word each of the jurors repeated when polled. Though the verdict thus failed to specify which of the two offenses this finding related to or whether it related to both, no one sought clarification from the jury before its discharge.

The trial judge entered a judgment convicting appellant of housebreaking and sentenced appellant to imprisonment for a term of from three to nine years. That sentence was within limits permissible for conviction of housebreaking but was far in excess of the statutory maximum for unlawful entry.[4] Appellant now argues that there was ambiguity in the verdict which rendered it fatally defective,[5] and with this position we agree.

## I

■ The Constitution provides that "The Trial of all [federal] Crimes, * * *" unless waived, "shall be by Jury."[6] To the extent that the evidence is legally sufficient to support conviction, the jury, and the jury alone, ascertains both whether the defendant is guilty and, if so, the crime or crimes of which he is guilty. Manifestly, the judge who allows the jury to rest after finding the accused's guilt of some unidentified offense and then proceeds to himself determine the offense of which the accused is to be held guilty invades the province of the jury.[7] Appellant's contention, in substance, is that that is just about what happened in this case.

■ The Government demurs, arguing that the trial judge, in passing the judgment and sentence under attack, accurately appraised the intent of the jury. To this end, it urges upon us "a strong presumption" that under the circumstances obtaining when the verdict was returned[8] "appellant was found guilty as charged."[9] Our initial difficulty with this approach is that any sort of presumption as to what an unspecific verdict determines, save in the clearest of cases, is apt to run counter to the well embedded and well justified judicial disinclination to second-guess juries—a disinclination which we ourselves have shared.[10] The courts, rather, have insisted upon definiteness as an indispensable quality of a valid verdict, and have adhered to the rule that a verdict must be set aside if its meaning is unalterably

---

1. Appellant was indicted in one count of housebreaking, D.C.Code § 22–1801 (1967 ed.), since amended (Supp. II 1969), and another count of assault with a dangerous weapon, D.C.Code § 22–502 (1967 ed.). At an initial trial, the jury found her not guilty on the assault count but could not agree on the housebreaking count. This appeal is from her conviction at a second trial—on the housebreaking count alone.

2. D.C.Code §§ 22–3102 (1967 ed.).

3. See Fed.R.Crim.P. 31(c).

4. Maximum terms of imprisonment when the offenses allegedly occurred were 15 years for housebreaking and six months for unlawful entry. D.C.Code §§ 22–1801, 22–3102 (1967 ed.).

5. Other contentions are referred to in note 23, infra.

6. U.S.Const., art. III, § 2. Impeachment cases are excepted. See also amend. 6. As to state crimes, see Duncan v. Louisiana, 391 U.S. 145, 88 S.Ct. 1444, 20 L. Ed.2d 491 (1968).

7. See United States v. DiMatteo, 169 F.2d 798, 801 (3d Cir. 1948).

8. See note 8, infra.

9. Compare Williams v. United States, 238 F.2d 215, 220 (5th Cir. 1956), and cases cited.

10. Brown v. United States, 112 U.S.App. D.C. 57, 59, 299 F.2d 438, 440, cert. denied Thornton v. United States, 370 U.S. 946, 82 S.Ct. 1593, 8 L.Ed.2d 812 (1962). See also Dozier v. United States, 127 U.S. App.D.C. 266, 382 F.2d 482 (1967).

ambiguous.[11] Our concern heightens beyond the danger point when we realize that the Government would rest appellant's fate on a presumed premise that in total circumstantial context does not follow as a matter of reasonable certainty. For whatever the efficacy of such a presumption in other situations—areas in which we need not now tread—a careful review of the record before us convinces us that it cannot safely be permitted operation here.

## II

The presumption the Government espouses interprets the jury's general verdict of guilty by ultimate reference back to the indictment alone. This may be an acceptable course where the jury returns a verdict of "guilty as charged," [12] or merely a verdict of "guilty" where neither the indictment nor the court's charge to the jury mentions more than one crime, or more than one degree of a single crime.[13] In the case at bar, however, there is nothing to reliably indicate that the jury's verdict was intended to refer to the indictment rather than to the judge's charge, which defined for the jury two different offenses.[14] And we perceive no other reason why the indictment, as opposed to the charge, should dictate the reading of the verdict.

In like fashion, scrutiny of the verdict from the vantage point of the charge leads inevitably to speculation. The charge set forth the elements both of housebreaking and unlawful entry but, except for characterizing the latter as "a lesser included offense" of the former—a term of art the charge left unexplained—the jury received no guidance as to their interrelationship. The jury was not told that it should consider the lesser offense only if it first concluded that appellant was not guilty of the greater offense.[15] It was not told that any verdict of guilty it reached might relate to one of the two offenses but could not properly relate to both.[16] Nor was it told that on any verdict of guilty all twelve jurors had to find appellant guilty of the same offense.[17]

Thus twelve people untutored in the law were left on their own as to such crucial questions as which offense to treat first, whether both had to be treated, and whether all jurors must find the elements of the same offense proven beyond a reasonable doubt. How they answered those questions is central to any attempt to define the meaning of the verdict and, of course, we know not how. And even if we knew that the jurors properly conceived their function, we must indulge in guesswork in any effort to determine the intent behind their verdict.[18] It goes without saying that

11. See, e. g., United States v. DiMatteo, *supra* note 7, 169 F.2d at 800–801; United States v. Schmidt, 376 F.2d 751, 753–755 (4th Cir. 1967) ; Soper v. United States, 27 F.2d 648, 649 (9th Cir. 1928).

12. Craemer v. Washington, 168 U.S. 124, 130, 18 S.Ct. 1, 42 L.Ed. 407 (1897). And see O'Connell v. United States, 253 U.S. 142, 144, 148, 40 S.Ct. 444, 64 L.Ed. 827 (1920).

13. St. Clair v. United States, 154 U.S. 134, 154, 14 S.Ct. 1002, 38 L.Ed. 936 (1894).

14. Compare Brown v. United States, *supra* note 10, 112 U.S.App.D.C. at 59, 299 F.2d at 440; United States v. Di Matteo, *supra* note 7, 169 F.2d at 800–801; United States v. Schmidt, *supra* note 11, 376 F.2d at 753–754, all involving multi-count submissions to the jury,

thus bearing a close similarity to the submission of the two offenses in this case.

15. See Fuller v. United States, 132 U.S. App.D.C. 264, 292–93, 407 F.2d 1199, 1227–1228 (*en banc* 1968), cert. denied 393 U.S. 1120, 89 S.Ct. 999, 22 L.Ed.2d 125 (1969).

16. *Id.*

17. See State v. Oswald, 306 S.W.2d 559, 563 (Mo.1957).

18. The circumstances which, by the Government's estimate, gave rise to the presumption urged boil down to but two considerations which, in our opinion, neither singly nor combinationally dispelled the obscurity in the verdict in this case. The first is that the prosecutor concentrated his evidence and argument on the house-

that sort of conjecture is an impermissible technique in a system of jurisprudence entitling the accused "to have his guilt found by a jury directly and specifically, and not by way of possible inference."[19] We hold that the verdict in this case was equivocal, and that the court's conviction of housebreaking could not be founded upon it.

### III

There remains for resolution only the question of the disposition that should now be made, a matter to which the parties have spoken. Anticipating, at oral argument, the possibility that the conviction might not stand up, we requested both sides to submit supplemental memoranda articulating their thoughts on the alternatives available in that event,[20] and this invitation both accepted. Appellant seeks the benefit of the doubt generated by the indistinct verdict by advocating a remand for re-sentencing for unlawful entry only.[21] The Government, on the other hand, urges a remand for a new trial, and in our view it has much the better of the argument.

The normal remedy for a hopelessly ambiguous verdict is the grant of a new trial,[22] and we deem that course particularly appropriate here. We have no more reason to believe that the jury intended to refer to unlawful entry as the offense on which it found guilt than that housebreaking was the crime it had in mind. We are in no better position to specify unlawful entry as the offense for which appellant is now to be sentenced than was the trial judge in fixing housebreaking as the measure of the sentence already imposed. And while certainly our appellant should be afforded a chance to show that the product of the evidence is the lower offense—or indeed, on a retrial, no offense at all— the Government is not to be deprived of a comparable opportunity to demonstrate that the proper outcome is the higher crime.

Moreover, we must ascribe due weight to the fact that, as appellant readily concedes, the evidence adduced at trial could reasonably have warranted a conviction of housebreaking. Nor can we ignore the additional fact that appellant did not object to the court's charge

---

breaking charge. The countervailing fact is that the court submitted the case to the jury on both housebreaking and unlawful entry, referring freely to both in its charge, and, as we have said, there simply is no basis for confident assessment of the action the jury took. The second consideration is that the trial participants—the court, court personnel and counsel alike— seem to have interpreted the verdict as an announcement of appellant's guilt of housebreaking. To this we attach some weight, see O'Connell v. United States, *supra* note 12, 253 U.S. at 144, 148, 18 S.Ct. 1; Drew v. United States, 192 F. 854, 856–857 (2d Cir. 1912); but, examined in context, we think its significance is weak. Appellant was constitutionally entitled to the judgment of the jury as to what her guilt was, and not to the judgment of others as to what the jury's judgment was. Moreover, it is obvious that the trial participants assumed the accuracy of the court's charge to the jury, for there was no objection on any score relevant to the problem here, but it was the defects in the charge that led to the ambiguities in the verdict.

Compare United States v. DiMatteo, *supra* note 7, 169 F.2d at 800; United States v. Schmidt, *supra* note 11, 376 F. 2d at 753–754. Thus it is not surprising that, during the brief era the reception of the verdict spanned, the participants would have thought to be clear that which was not. And for this reason, together with the nature of the problem and the gravity of the injury to appellant evident from a misreading of the verdict, we have entertained appellant's claim notwithstanding the absence of objection to reception of the verdict. See Fed.R.Crim.P. 52(b).

19. United States v. DiMatteo, *supra* note 7, 169 F.2d at 801.

20. Compare the procedure utilized in Brown v. United States, *supra* note 10, 112 U.S.App.D.C. at 59–60, 299 F.2d at 440–441.

21. See United States v. Shackelford, 180 F.Supp. 857, 860 (S.D.N.Y.1957).

22. Williams v. United States, *supra* note 9, 238 F.2d at 220 and cases cited.

in the aspects by which it paved the way to the present dilemma, or the further fact that appellant, no less than the Government, failed to seek elimination of the vagueness in the verdict that resulted. All circumstances considered, we think the cause of justice is best served by adopting the Government's suggestion.

Accordingly, we vacate the judgment of appellant's conviction and remand the case to the District Court for a new trial.[23]

So ordered.

23. As a new trial is necessary in any event, we need not rule upon appellant's objection to the treatment of the "right from wrong" test in the portion of the court's charge pertaining to her insanity defense, or upon her contention that the trial judge erred in denying her request for a sentence under the Narcotic Addict Rehabilitation Act of 1966, 80 Stat. 1438 (1966). We wish to reemphasize, however, as to the former, that where the evidence requires mention of that test, see, e. g., King v. United States, 125 U.S.App.D.C. 318, 332–33, 372 F.2d 383, 397–398 (1967), the trial judge must make clear to the jury that "even if they believed that defendant did know right from wrong, they could still find, on the basis of other evidence, that defendant's alleged act was a product of a mental disease or defect, which of course, is the only ultimate test of criminal responsibility in this Circuit." Blocker v. United States, 116 U.S.App.D.C. 78, 80, 320 F.2d 800, 802, cert. denied 375 U.S. 923, 84 S.Ct. 269, 11 L.Ed.2d 167 (1963).