UNITED STATES of America, Appellee,

v.

Stanley Joseph MARKIS, Appellant.

No. 514, Docket 29585.

United States Court of Appeals Second Circuit.

Argued June 8, 1965.

Decided Oct. 29, 1965.

Charles Hanken, Bridgeport, Conn. (Philip Baroff, Bridgeport, Conn., on brief), for appellant.

Howard R. Moskof, Asst. U. S. Atty. (Jon O. Newman, U. S. Atty.), for appellee.

Before WATERMAN, FRIENDLY and SMITH, Circuit Judges.

FRIENDLY, Circuit Judge:

■ Markis appeals from a judgment of the Distict Court for Connecticut convicting him, after trial before Chief Judge Timbers and a jury, on a two-count information under 26 U.S.C. § 7203 of wilful failure to pay the special occupational gambling tax provided in § 4411 and to register as required in § 4412. He was sentenced to imprisonment for one year and a $10,000 fine on the first count and to two years probation on the second. His arguments as to the unconstitutionality of the statutes are dealt with in United States v. Costello, 352 F.2d 848 (2 Cir. 1965). Although he now presses the claim of unfair publicity, he requested trial at Bridgeport, and made no motion for a change of venue or a continuance. No juror selected to try him had read of his arrest, none of the publicity concerning the trials preceding his had referred to him, and he made no motion relating to publicity until after verdict. Apart from all else, this came too late, United States v. Costello, supra.

Special Agent Ripa of the I.R.S. testified that on many occasions in August and September, 1964, he placed bets with John Mento in the latter's service station, observed Mento dial telephone number 336-0254, and heard him speak with a man whom, on almost all occasions, he

asked for or addressed as "Joe," and repeat the wagers. Records of the telephone company showed that number 336–0254 was located in apartment C–6, 2225 Main Street, Bridgeport. It was a number in the name of Mrs. Peggy Donofrio; no one by that name could be identified. Markis had long occupied the apartment, which was listed in the name of F.Scinto, also unknown, and frequently paid the rent. He was observed entering and leaving the apartment in the period when the bets were being placed. About July 27 he was introduced to Ripa by the nickname "Stash."

On affidavits of agents reciting the substance of the above and further details, including Markis' failure to purchase an occupational tax stamp, a United States Commissioner, on October 1, 1964, issued a warrant commanding a search of the apartment for and seizure of "certain records, papers, writings, slips, books, newspapers primarily reporting results and information of horse races and other sporting activity, markings, writing materials, racing forms, cash monies, machines and equipment" being used in violation of the gambling tax laws. On October 5, 1964, the agent who had made the principal affidavit swore before the same Commissioner to a complaint which alleged "That on or about October 8, 1964," John Doe, also known as Joe or Stash, engaged in the business of accepting wagers without payment of the occupational stamp tax; the complaint contained the substance of what had been set forth in the search warrant affidavits although in more abbreviated form and without the statement that a search of the records had revealed no purchase of a stamp by Markis. On the same day the Commissioner issued a warrant of arrest.

The search and arrest warrants were executed by Special Agent Ryan, accompanied by other officers, on October 8 about 1:15 P.M. After knocking and making proper announcement, Ryan heard movement inside but the door was not opened. An attempt to force entry with a sledge hammer failed, the door having been barricaded. Shortly thereafter the officers heard the barricade being removed, and the door was opened by Markis, wearing pajama bottoms and one wet slipper; he identified himself, stating his name and acknowledging he was known as "Stash" or "Joe." Ryan gave Markis both warrants to read. He found a quantity of paraphernalia useful for the conduct of a gambling business, the telephone, bearing number 336–0254, torn out of the wall and with the amplifier separated from the receiver, and, in the bathroom, the mate to the wet slipper. The telephone having been repaired, unknown voices called and sought to place bets with "Stash" or "Joe." Flushing of the toilet trap with the aid of a plumber yielded slips of paper which were identified as notations by gamblers to record bets. While still in the apartment, Ryan interviewed Markis, after explaining "that he had the rights under the Fifth Amendment against self-incrimination, and that he didn't have to answer any questions that I asked him." Ryan testified, without objection:

"I asked him why he hadn't purchased a wagering stamp, and he said he didn't need one because he doesn't take bets, that he only gambles for a living.

\* \* \* \* \* \*

"And I asked him if he was accepting wagers, would he have registered and purchased a Federal wagering stamp, and he said he would have."

■ (1) Markis claims it was error to admit Ripa's testimony as to Mento's placing of bets by telephone in the absence of identification of Markis' voice as that on the receiving end. It is plain that Ripa could not be allowed to testify as to what Mento said the receiver said; Mento alone could do that. See Van Riper v. United States, 13 F.2d 961, 968 (2 Cir.), cert. denied, 273 U.S. 702, 47 S.Ct. 102, 71 L.Ed. 848 (1926); United States v. Benjamin, 328 F.2d 854, 861 (2 Cir.), cert. denied, 377 U.S. 953, 84 S. Ct. 1631, 12 L.Ed.2d 497 (1964). But Mento's dialing of 336–0254 and his

placing of bets, including language used in doing so, were not declarations introduced for their truth, and the hearsay rule thus has no application to Ripa's testimony relating to these events. See United States v. Press, 336 F.2d 1003, 1011–1012 (2 Cir.), cert. denied, 379 U.S. 965, 85 S.Ct. 658, 13 L.Ed.2d 559 (1964); United States v. Ross, 321 F.2d 61, 68–69 (2 Cir.), cert. denied, 375 U.S. 894, 84 S. Ct. 170, 11 L.Ed.2d 123 (1963); McCormick, Evidence §§ 225, 228 (1954). If Mento's remarks addressing the unseen listener as "Joe" were to be regarded as hearsay on the basis, perhaps overnice, that they amounted to declarations by Mento that he was talking to someone who acknowledged or whose voice confirmed being "Joe," the statements would come within the hearsay exception for utterances made simultaneously with the event being perceived—an exception normally classified under *res gestae*, McCormick, supra, § 273; Uniform Rule of Evidence 63(4). It is true that, standing alone, all this testimony, even though not banned by the hearsay rule, would be objectionable as irrelevant. But that deficiency was removed by the evidence that the telephone bearing the number 336–0254 was in the apartment Markis occupied and his admission to Agent Ryan that he was known as "Joe."[1] This factual chain afforded competent circumstantial evidence that Markis was indeed the man with whom Mento was placing bets.

(2) Markis contends that the search warrant was invalidly issued, that the search and seizure went beyond "the means of committing" the offense, F.R.Cr.P. 41(b) (2), and that the arrest warrant was invalid so that all fruits of the arrest must be excluded.[2]

 The search warrant was valid under the criteria stated in the Supreme Court's most recent decision on the sub-

ject, United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965). The attack on the arrest warrant based on the point that, in obvious error, the complaint alleged Markis had committed the offense three days in the future requires no discussion. Cf. United States v. Zambito, 315 F.2d 266, 269 (4 Cir.), cert. denied, 373 U.S. 924, 83 S.Ct. 1524, 10 L.Ed.2d 423 (1963). We find no other sufficient basis for holding the arrest warrant defective. A complaint, like affidavits supporting a search warrant, must be read "in a commonsense and realistic fashion." United States v. Ventresca, supra, 380 U.S. at 108, 85 S.Ct. at 746. Furthermore, despite the statement in F.R.Cr.P. 4, "If it appears from the complaint that there is probable cause to believe," we are by no means convinced that the Rules meant to prohibit a Commissioner from relying on affidavits, relating to the same person and the same offense, which he had considered in issuing a search warrant only four days before; the fact that the Advisory Committee on the Criminal Rules has recommended an amendment expressly permitting the necessary showing for an arrest warrant to be made by affidavits, 31 F.R.D. 665, 671; 34 F.R.D. 411, 415, by no means establishes that the existing Rule would not be construed to permit this.

 The remaining issue under this heading is the scope of the search and seizure. Although the objects seized were within the description of the warrant, that would not be determinative if its reach exceeded the bounds permitted by F.R.Cr.P. 41(b) (2) or the Fourth Amendment. We entertain no doubt that sporting newspapers, slips on which bets were being recorded, pens for recording bets, the calendar for checking races, and the much abused telephone were "instrumentalities and means by which" the

---

1. Since Markis did not urge, here or in the district court, that receipt of his admission to Agent Ryan violated the extrapolation of Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), which is currently mooted, we need not deal with that question.

2. In view of the amendment of 26 U.S.C. § 7608 by 76 Stat. 1143 (1962), the question which concerned us in United States v. Viale, 312 F.2d 595, 599–600 (2 Cir.), cert. denied, 373 U.S. 903, 83 S.Ct. 1291, 10 L.Ed.2d 199 (1963), no longer arises.

crime here charged—the conduct of a wagering business without payment of the tax or registration—was being committed. Harris v. United States, 331 U.S. 145, 154, 67 S.Ct. 1098, 91 L.Ed. 1399 (1947). See Rutherford v. United States, 264 F.2d 180 (9 Cir.), cert. denied, 359 U.S. 1003, 79 S.Ct. 1140, 3 L.Ed.2d 1031 (1959); United States v. Shaffer, 291 F.2d 689 (7 Cir.), cert. denied, 368 U.S. 915, 82 S.Ct. 192, 7 L.Ed.2d 130 (1961). The issue is thus narrowed to the bills for rent and for telephone service. To support their seizure the Government invokes Marron v. United States, 275 U.S. 192, 199, 48 S.Ct. 74, 72 L.Ed. 231 (1927), where the Court sanctioned the seizure of utility bills of an enterprise conducted in violation of the National Prohibition Act. Appellant claims the authority of Marron to have been undermined by later decisions, as argued in Chief Judge Sobeloff's dissenting opinion in United States v. Boyette, 299 F.2d 92, 97–98 (4 Cir.), cert. denied, 369 U.S. 844, 82 S.Ct. 875, 7 L.Ed.2d 848 (1962). We are not persuaded of this and would follow Marron unless the Court should instruct otherwise. But even if we should be wrong in this, we would hold that receipt of these items in evidence would have been harmless error, 28 U.S.C. § 2111, F.R.Cr.P. 52(a).[3]

(3) Markis' most impressive argument for reversal is that the judge erred in refusing to give a requested instruction that the jury might convict of a lesser included offense. Consideration of this requires a statement of the pertinent statutes.

Chapter 75 of the Internal Revenue Code creates a hierarchy of sanctions under the revenue laws. Section 7201, "the capstone," Spies v. United States, 317 U.S. 492, 497, 63 S.Ct. 364, 87 L.Ed. 418 (1943), provides that "[a]ny person who willfully attempts in any manner to evade or defeat any tax imposed by this title or

the payment thereof" shall be guilty of a felony, subject to a maximum fine of $10,000 and maximum imprisonment of five years. Next in rank stands § 7203 under which Markis was prosecuted; this says that "[a]ny person required under this title to pay any estimated tax or tax, or required by this title or by regulations made under authority thereof to make a return * * * or supply any information" who wilfully fails to comply is guilty of a misdemeanor, again with a maximum fine of $10,000 but with imprisonment limited to a year. Passing over other offenses not here relevant, we come to § 7262, which provides that any person who does any act that makes him liable to the special occupational tax on gambling "without having paid such tax, shall, besides being liable to the payment of the tax, be fined not less than $1,000 and not more than $5,000." Finally, with an exception not here relevant, § 7272(a) directs that "[a]ny person * * * who fails to register with the Secretary or his delegate as required by this title or by regulations issued thereunder shall be liable to a penalty of $50."

▮ Among Markis' written requests for instructions was the following:

"If you find that the Defendant was required under the Statute to register and pay the tax but that he did not wilfully, as I described the word wilfully to you, fail to pay such tax or wilfully fail to so register but that he merely did not pay the tax or register, then you may find him guilty of the lesser included offense set forth in 26 U.S.C. 7262.

Rule 31(c) Federal Rules of Criminal Procedure."

Chief Judge Timbers declined to give this as "incomprehensible to the Court"; due exception was taken, and although the requested charge may have been too broad, see note 6 *infra*, we regard the point as sufficiently raised.

---

3. Since both the rent receipts and the telephone bills were made out in names other than that of the defendant, it is difficult to see what they added to the Government's case. The rent receipts were par-

ticularly insignificant, since the secretary to the apartment building manager testified that Markis often paid the rent of apartment 6-C to her.

■ F.R.Cr.P. 31(c), referred to in the request, provides that a defendant "may" be convicted of any "offense necessarily included in the offense" charged. Despite the fact that the primary purpose of the Act of June 1, 1872, § 9, 17 Stat. 198, carried forward by this Rule, was to aid the prosecution when its proof did not fully live up to expectation, it is a long settled principle that, in appropriate cases, it may also be availed of by the defense, Stevenson v. United States, 162 U.S. 313, 16 S.Ct. 839, 40 L.Ed. 980 (1896)—although the Supreme Court has rarely found cases suitable for its application. See Berra v. United States, 351 U.S. 131, 76 S.Ct. 685, 100 L.Ed. 1013 (1956); Sansone v. United States, 380 U.S. 343, 85 S.Ct. 1004, 13 L.Ed.2d 882 (1965).

■ In its latest pronouncement the Court has defined the rule as applicable when "the lesser offense [is] included within but not, on the facts of the case, * * * completely encompassed by the greater." Sansone v. United States, supra, 380 U.S. at 350, 85 S.Ct. at 1009. So far as concerns Markis' failure to pay the tax, the case thus turns in the first instance on whether 26 U.S.C. § 7262 is a circle included within § 7203 or is congruent therewith.

■ There is no dispute that both sections require proof (1) that Markis was accepting wagers or receiving them on behalf of someone engaged in the business and (2) that he failed to pay the $50 tax. The question is whether § 7262 requires the proof of wilfulness, or of the same kind of wilfulness, that § 7203 demands. The answer becomes clear when we look at the gambling tax statute as enacted in 1951 and embodied as chapter 27A of the Internal Revenue Code of 1939. The penalty provision respecting the occupational tax reads as follows:

"§ 3294. Penalties

(a) Failure to pay tax. Any person who does any act which makes him liable for special tax under this subchapter, without having paid such tax, shall, besides being liable to the payment of the tax, be fined not less than $1,000 and not more than $5,000.

(b) Failure to post or exhibit stamp. Any person who, through negligence, fails to comply with section 3293, shall be liable to a penalty of $50, and the cost of prosecution. Any person who, through willful neglect or refusal, fails to comply with section 3293, shall be liable to a penalty of $100, and the cost of prosecution.

(c) Willful violations. The penalties prescribed by section 2707 with respect to the tax imposed by section 2700 shall apply with respect to the tax imposed by this subchapter."

The cross-reference in paragraph (c) in effect made applicable the felony and misdemeanor penalties for wilful misconduct now contained in §§ 7201–7203. It is thus patent that wilfulness was not an essential element of the offenses described in paragraph (a), the predecessor of § 7262 of the 1954 Code,[4] and the reports with respect to the 1954 legislation indicate that the rearrangement was not intended to work a substantive change.[5] See, accord, United States v. Kahriger, 210 F.2d 565, 571 (3 Cir. 1954); Burks v. United States, 287 F.2d 117, 125 (9 Cir. 1961), cert. denied, 369 U.S. 841, 82 S.Ct. 868, 7 L.Ed.2d 846 (1962); compare United States v. Shaffer, supra, 291 F.2d at 693. Subsequent to the argument before us, the Solicitor General conceded, in a memorandum filed with the Supreme Court on defendant's petition for certiorari to review United States v. Altiere, 343 F.2d 115 (7 Cir. 1965), that § 7262 does not require proof of wilfulness, and the Government has withdrawn its contrary contention here.[6]

■ It argues, however, that even on this basis refusal of the instruction

4. See the classical discussion by Mr. Justice Jackson in Morissette v. United States, 342 U.S. 246, 250–262, 72 S.Ct. 240, 96 L.Ed. 288 (1952).

5. See 3 U.S.Cong. & Ad.News, pp. 4577, 5257 (1954).

6. The Solicitor General's concession went only to § 7262 and reserved the question

kg

was not error since, as said in Sansone, "A lesser-included offense instruction is only proper where the charged greater offense requires the jury to find a *disputed* factual element which is not required for conviction of the lesser-included offense," 380 U.S. at 350, 85 S.Ct. at 1009 (emphasis supplied), and, as it urges, Markis' wilfulness was not really in dispute. The Government does not, of course, deny that the issue of wilfulness was disputed in the sense that it had to be submitted to the jury since, absent a concession, there can never be a directed verdict for the prosecution on any issue in a criminal case. Its argument is rather that, as Sansone itself demonstrates, something more than that is required to create "a disputed factual element" in the sense of that opinion, and that, in view of Agent Ryan's unimpeached testimony as to Markis' admission shortly after arrest,[7] that extra something did not exist here.

 If the testimony had come from Markis' lips, we would be quite sure the Government was right. For then Markis would have admitted knowing that conducting a wagering business or receiving wagers required payment of a tax, the jury must have found he was doing exactly that, and there was nothing to suggest that the activity proved against him was so close to the line that he might reasonably have thought the law inapplicable to it. We reach the same result although the testimony was of an extrajudicial statement allegedly made by Markis when, as here, the making of the statement was not attacked or contradicted. The mere fact that the jury was still free to disbelieve this portion of the agent's testimony does not elevate the issue to a truly "disputed" one; in the language of the Model Penal Code § 1.07(5) (1962), it does not provide "a rational basis for a verdict acquitting the defendant of the offense charged and convicting him of the included offense." Model Penal Code § 1.08 comment, at 42–43 (Tent.Draft No. 5, 1956). This hits the essential

point. The lesser-included offense charge is not required simply because the jury could exercise its power of acquitting on the greater charge for no reason at all "in the teeth of both law and facts," Horning v. District of Columbia, 254 U.S. 135, 138, 41 S.Ct. 53, 54, 65 L.Ed. 185 (1920); there must be a rational basis for its doing so. Precisely this, we think, is the distinction between Sparf v. United States, 156 U.S. 51, 63–64, 15 S.Ct. 273, 39 L.Ed. 343 (1895), and Stevenson v. United States, supra, 162 U.S. at 315, 322–323, 16 S.Ct. 839, 40 L.Ed. 980, both cited by the Court with apparent approval in the recent cases of Berra and Sansone.

Appellant's other points do not require discussion.

Affirmed.

---

whether § 7272 states an offense or merely a civil penalty. Our opinion is similarly limited.

**7.** For reasons indicated in note 1, the admissibility of Markis' admission need not be considered.