**UNITED STATES of America**

v.

**Paul W. MARCEY, Appellant.**

**No. 22819.**

United States Court of Appeals,
District of Columbia Circuit.

Argued April 17, 1970.

Decided Feb. 24, 1971.

---

Mr. Albert J. Ahern, Jr., Washington, D. C., for appellant.

Mr. Robert C. Crimmins, Asst. U. S. Atty., with whom Messrs. Thomas A. Flannery, U. S. Atty., John A. Terry, Asst. U. S. Atty., and Nicholas S. Nunzio, Asst. U. S. Atty., at the time the brief was filed, were on the brief, for appellee.

Before McGOWAN, TAMM and ROBINSON, Circuit Judges.

PER CURIAM:

Appellant was indicted for first degree murder in connection with the slaying of his wife. The Government's theory was that in a five-minute episode he stabbed her 18 times with a knife. Appellant did not deny the stabbing, but defended on grounds that he lacked mens rea and that he was insane at the time.[1] Following a nine-day trial to a jury, appellant was convicted of manslaughter, and he now appeals. After carefully considering the numerous points he raises, we affirm.

 Appellant complains of the trial judge's treatment of incriminating statements he allegedly made prior to the date of the offense. The Government was allowed to introduce testimony to the effect that appellant had threatened to kill his wife and "do five years standing on his head" by pleading insanity. Appellant contends that the statements should not have been admitted in evidence because they were nonprobative and prejudicial. We think the statements were plainly relevant on the issue of mens rea,[2] and the trial judge ruled that their probative value outweighed their prejudicial effect,[3] which he felt was dissipated by the large volume of psychiatric testimony; moreover, he limited the scope of the Government's inquiry as to them. Thus the judge assigned a role to each of the relevant criteria, and we perceive no basis for upsetting the balance he struck upon weighing them.[4] Appellant also

1. This case was previously before this court on appellant's ultimately unsuccessful contest of an order committing him to Saint Elizabeths Hospital for a mental examination to determine his competence to stand trial. Marcey v. Harris, 130 U.S.App.D.C. 301, 400 F.2d 772 (1968).

2. United States v. Gay, 133 U.S.App.D.C. 337, 340, 410 F.2d 1036, 1039–1040 (1969); Harper v. United States, 99 U.S.App.D.C. 324, 325–326, 239 F.2d 945, 946–947 (1956); Fairbanks v. United States, 96 U.S.App.D.C. 345, 347, 226

F.2d 251, 253 (1955). See also Wakaksan v. United States, 367 F.2d 639, 645–646 (8th Cir. 1966), cert. denied. 386 U.S. 994, 87 S.Ct. 1312, 18 L.Ed.2d 341 (1967).

3. See text *infra* at notes 8–11.

4. Shepard v. United States, 290 U.S. 96, 103–104, 54 S.Ct. 22, 78 L.Ed. 196 (1933), cited by appellant, is distinguishable. There evidence introduced to prove one fact was used by the prosecution to prove another by hearsay. That was not the case here.

contends that in any event the jury should have been instructed that the statements should be considered with care and could not serve as a basis for conviction unless corroborated. The legal principles to which appellant refers apply to confessions and admissions,[5] as to which special precautions are needed to safeguard against false convictions.[6] They do not obtain in reference to pre-offense statements of intent, which "contain none of the inherent weaknesses of confessions or admissions after the fact."[7]

 Appellant claims that the trial judge erred in receiving in evidence a photograph of the deceased taken after appellant had allegedly beaten her some six months prior to the offense. One of the conflicts in the testimony was in relation to appellant's feelings toward and treatment of his wife. Government witnesses testified that appellant had mistreated her, while appellant testified that he loved her. On cross-examination, appellant was shown five photographs purporting to depict her appearance after the alleged assault, but he denied that her appearance was as bad as the photographs indicated.[8] On rebuttal, the Government moved for the admission of the photographs into evidence, and the trial judge let in one of the five for consideration only on the issue of appellant's credibility. The judge reasoned, *inter alia*, that the photograph could have been admitted for its tendency to show intent, and that it was non-prejudicial[9] in the light of the uncontradicted testimony describing the brutal manner in which appellant had killed his wife. We agree with the trial judge that the photograph was relevant to intent as well as to appellant's credibility;[10] we agree, too, that the inquiry did not end at that point. As we recently reaffirmed, probative value must outweigh the probability of prejudice before even relevant evidence may be admitted.[11] Here the trial judge reached a conclusion after careful balancing of the pertinent factors, and we detect no abuse in the discretion he exercised.

 Appellant also claims that three psychiatrists on the staff of Saint Elizabeths Hospital, whom the Government called as expert witnesses on the insanity issue, should not have been permitted to testify because they had participated in a pretrial psychiatric staff conference of which appellant's attorney was not notified and at which the attorney was not present. Reasoning by analogy to United States v. Wade,[12] and relying upon our decision in Thornton v. Corcoran,[13] appellant argues that the staff conference violated his Fifth Amendment privilege against self-incrimination and his Sixth Amendment right to counsel. Our close scrutiny of the voluminous record discloses, however, that while appellant was interviewed

---

5. Smith v. United States, 348 U.S. 147, 75 S.Ct. 194, 99 L.Ed. 192 (1954); Opper v. United States, 348 U.S. 84, 89–92, 75 S.Ct. 158, 99 L.Ed. 101 (1954); Naples v. United States, 120 U.S.App.D.C. 123, 128–129, 344 F.2d 508, 513–514 (1964), motion to clarify denied, 123 U.S.App. D.C. 292, 359 F.2d 276 (1966); Drew v. United States, 118 U.S.App.D.C. 11, 16, 331 F.2d 85, 90 (1964); Jones v. United States, 111 U.S.App.D.C. 276, 280–281, 296 F.2d 398, 402–403, cert. denied, 370 U.S. 913, 82 S.Ct. 1260, 8 L.Ed.2d 406 (1962).

6. Warszower v. United States, 312 U.S. 342, 347, 61 S.Ct. 603, 606, 85 L.Ed. 876 (1941).

7. *Id.*

8. This put appellant's credibility in issue, and paved the way for introduction of the photograph on rebuttal.

9. To authenticate the photographs, the decedent's brother recounted the circumstances surrounding the photography and vouched for the accuracy of the prints.

10. Compare the cases cited *supra* note 2.

11. United States v. Bussey, 139 U.S.App. D.C. 268, 271, 432 F.2d 1330, 1333 (1970). See also Luck v. United States, 121 U.S.App.D.C. 151, 155–157, 348 F.2d 763, 767–769 (1965).

12. 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed. 2d 1194 (1967).

13. 132 U.S.App.D.C. 232, 407 F.2d 695 (1969).

during the course of the conference, nothing even remotely resembling an incriminating statement at the conference crept into his trial. It reveals, too, that his counsel did not experience any substantial difficulty in examining witnesses or in reconstructing events which his presence at the staff conference could have avoided.[14] Finding no prejudice stemming from counsel's absence from the staff conference,[15] we do not reach the broad issues appellant tenders.[16]

 Another contention strongly urged is that the trial judge erred in failing to instruct the jury that it might, if so persuaded by the evidence, find him guilty of assault with a dangerous weapon as a lesser offense included within the murder charge. The jury was instructed as to the elements of first degree murder, second degree murder and manslaughter, and was authorized to convict of one or to acquit. No more was required, for there was no foundation in the evidence for a conviction of assault with a dangerous weapon. Unlike cases involving an issue as to whether the accused's act caused the victim's death,[17] thereby presenting an issue as to whether the offense, if any, was homicide or was something less, the uncontradicted evidence in the case at bar established that appellant's wife died from the multiple stab wounds he inflicted upon her. Since every legally unjustifiable assault with a dangerous weapon producing death is either murder or manslaughter,[18] appellant was guilty of one or the other or else was not guilty at all.[19] Under clear precedents, an instruction on a lesser included offense need not and should not be given unless there is evidence to support it.[20] We find no error in the trial judge's charge on this score.[21]

14. One of the conference participants testified in appellant's behalf. Cross-examination of the Government's experts revealed occasional failures of memory but mostly as to the sources of particular bits of information. Some of these failures were remediable since they related to data in hospital records which were available at trial. Rarely were witnesses asked whether, and nowhere does it appear that, a missing item affected the testimony given.

15. See United States v. Greenwell, No. 22,563 (D.C.Cir. Sept. 12, 1969) at 2 (unpublished). And in light of the conflicting testimony as to whether appellant was criminally responsible, we sustain the trial judge's refusal to grant a judgment of acquittal. See Gaskins v. United States, 133 U.S.App.D.C. 288, 291–292, 410 F.2d 987, 990–991 (1967); Washington v. United States, 129 U.S. App.D.C. 29, 30–31, 290 F.2d 444, 445–446 (1967).

16. See, e. g., Bush v. Texas, 372 U.S. 586, 590, 83 S.Ct. 922, 9 L.Ed.2d 958 (1963); United States v. Petrillo, 332 U.S. 1. 12, 67 S.Ct. 1538, 91 L.Ed. 1877 (1947).

17. See, e. g., Perry v. United States, 137 U.S.App.D.C. 260, 422 F.2d 697 (1969), where the question whether assault with a dangerous weapon is a lesser included offense of homicide was not ruled upon.

18. According to the presence or absence of premeditation, deliberation and malice. See Carter v. United States, 141 U.S.App. D.C. 259 at 263 n. 19, 437 F.2d 692 at 696 (D.C.Cir. 1970).

19. *Id.* In the eyes of the law, an assault which results in death is not just an assault, even of the aggravated type. See Shaw v. United States, 103 U.S.App.D.C. 82, 254 F.2d 785 (1958).

20. See Fuller v. United States, 132 U.S. App.D.C. 264, 294, 297, 407 F.2d 1199, 1229, 1232 (*en banc* 1968), cert. denied, 393 U.S. 1120, 89 S.Ct. 999, 22 L.Ed.2d 125 (1969); Belton v. United States, 127 U.S.App.D.C. 201, 206–207, 382 F.2d 150, 155–156 (1967); Ciullo v. United States, 117 U.S.App.D.C. 31, 325 F.2d 227 (1963). Appellant's counter-citation is United States v. Hamilton, 182 F.Supp. 548, 551 (D.D.C.1960), citing in turn Logan v. United States, 144 U.S. 263, 307, 12 S.Ct. 617, 36 L.Ed. 429 (1892), which, however, did not deal with the need for an evidentiary foundation. Appellant's theory on mens rea was satisfactorily covered by the judge's instructions on second degree murder and manslaughter, and his insanity theory by appropriate instructions on that subject.

21. See Belton v. United States, *supra* note 20, 127 U.S.App.D.C. at 206–207, 382 F.2d at 155–156; Stith v. United States, 126 U.S.App.D.C. 95, 374 F.2d 309

■ Appellant argues additionally that the trial judge's instruction as to the consequences of an acquittal by reason of insanity was insufficient, and that the jury should have been informed of the possible length of resulting hospitalization, of the fact that appellant need not have been psychotic to be committed, and that appellant would have to carry the burden of proving that he was not dangerous in order to secure his eventual release.[22] The judge gave an instruction in the exact form approved in Bolton v. Harris,[23] which sets forth the legal standard for commitment, and we think no more was required, certainly not along the lines suggested by appellant. We have admonished against speculation as to the length of confinement for hospitalization,[24] and appellant's complaint on burden of proof is referable to only one of several avenues of release from hospitalization.[25] A complete canvassing of release alternatives for the jury's edification could have impermissibly led to conjecture as to what might actually occur in appellant's case.[26]

■ In sum, we find no error in the rulings of which appellant complains.[27]

(1967). Compare United States v. Comer, 137 U.S.App.D.C. 214, 421 F.2d 1149 (1969).

With this disposition, it is unnecessary to decide whether assault with a dangerous weapon can ever be a lesser included offense of homicide. Conviction of assault with a dangerous weapon necessitates proof that a dangerous weapon was used in the course of the assault, but neither of the homicide offenses so limits the means by which death occurs. Assault with a dangerous weapon thus embraces an element not required for murder or manslaughter. See Sansone v. United States, 380 U.S. 343, 350–351, 85 S.Ct. 1004, 13 L.Ed.2d 882 (1965). See also Kelly v. United States, 125 U.S.App. D.C. 205, 370 F.2d 227 (1966), cert. denied, 388 U.S. 913, 87 S.Ct. 2127, 18 L.Ed.2d 1355 (1967).

22. Appellant also protests the judge's refusal to instruct that a drug-induced stupor may negate specific intent. There was evidence that appellant took amphetamines, drank a quantity of liquor, and had trouble driving to the scene of the homicide, but there was no evidence that he was in a stupor at the time of the stabbing. This quantum of evidence did not rise to the level required, Womack v. United States, 119 U.S.App.D.C. 40, 336 F.2d 959 (1964); Tatum v. United States, 88 U.S.App.D.C. 386, 390–391, 190 F.2d 612, 616–617 (1951), and in any event other instructions given on the element of specific intent sufficed.

23. 130 U.S.App.D.C. 1, 10 n. 50, 395 F.2d 642, 651 n. 50 (1968).

24. See Lyles v. United States, 103 U.S. App.D.C. 22, 27, 254 F.2d 725, 730 (en banc 1957), cert. denied, 356 U.S. 961, 78 S.Ct. 997, 2 L.Ed.2d 1067 (1958).

25. For example, a post-trial hearing might eventuate in a decision that appellant does not require hospitalization. At such a hearing, the burden of proof is on the Government. See Bolton v. Harris, supra note 23, 130 U.S.App.D.C. at 7–11, 395 F.2d at 648–652. Again, after a period of commitment, appellant might be released by the hospital administratively, either conditionally or unconditionally, see D.C.Code § 24–301(e) (1967), or release might be sought by habeas corpus. See D.C.Code § 24–301(g) (1967).

26. See Lyles v. United States, supra note 24, 103 U.S.App.D.C. at 27, 254 F.2d at 730. Appellant also argues that the trial judge should have instructed the jury that the mere probability of his sanity would not be sufficient to authorize his conviction. The judge gave several instructions on the subject, and they met the requirements of Scurry v. United States, 120 U.S.App.D.C. 374, 347 F.2d 468, cert. denied, 389 U.S. 883, 88 S.Ct. 139, 19 L.Ed. 2d 179 (1965). The judge was not obliged to do more.

27. Appellant also assigns as error an Allen-type instruction, see Allen v. United States, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896), which the trial judge gave at the conclusion of his charge to the jury. Appellant's single objection, voiced originally in the District Court and pressed here, is that such an instruction is inappropriate prior to the jury's retirement to commence deliberations. Precedent, however, is to the contrary. Fulwood v. United States, 125 U.S.App. D.C. 183, 185–186, 369 F.2d 960, 962–963 (1966), cert. denied, 387 U.S. 934, 87 S.Ct. 2058, 18 L.Ed.2d 996 (1967); McNeil v. United States, 140 U.S.App. D.C. 3, 4, 433 F.2d 1109, 1110 n. 2 (1969); United States v. Johnson, 139

The judgment appealed from is accordingly

Affirmed.

U.S.App.D.C. 193, 197–201, 432 F.2d 626, 630–634 (1970). And since the verdict was not forthcoming until four and a half hours after rendition of the instruction, we are not persuaded that its timing could in any event have affected appellant prejudicially.