**UNITED STATES of America**
**v.**
**Rodney SINCLAIR, Appellant.**
**No. 23178.**

United States Court of Appeals, District of Columbia Circuit.

Argued May 20, 1970.

Decided March 31, 1971.

Petition for Rehearing Denied May 6, 1971.

Spottswood W. Robinson, III, Circuit Judge, dissented and filed opinion.

---

Mr. Stanley Klavan, Rockville, Md. (appointed by this Court) for appellant.

Mr. Richard L. Rosenfield, Atty., Department of Justice, of the Bar of the Supreme Court of Illinois, pro hac vice, by special leave of Court, with whom Messrs. Thomas A. Flannery, U. S. Atty., John A. Terry and James R. Phelps, Asst. U. S. Attys., were on the brief, for appellee.

Before LEVENTHAL and ROBINSON, Circuit Judges, and DAVIES,* U. S. District Judge for the District of North Dakota.

LEVENTHAL, Circuit Judge:

This is an appeal from a judgment, entered after verdict, of the felony of burglary in the second degree. 22 D.C.Code § 1801(b) (Supp. III, 1970). Appellant's sole complaint is the refusal of the trial judge to give a requested instruction on the lesser offense of unlawful entry, a misdemeanor under 22 D.C.Code § 3102 (1967). We affirm.

## I. *The Facts*

The arresting officers testified that at 8:30 p. m. on April 5, 1968, three persons were seen running from the University Shop, a clothing store located at 1318 G Street, N.W., which had closed for business at 1:30 p. m. because of the widespread disturbances and looting following the assassination of Dr. Martin Luther King. While other officers chased the three persons, Officer Herman Cornish entered the store through a broken showcase window, the front door being locked. He found appellant hiding behind a clothes rack and arrested him as he was trying to sneak away. Appellant's hands were empty; he was carrying no merchandise; nor was any merchandise piled up in the vicinity where he had been. "[T]he only words that this man said at the time was that he was just doing what everyone else was doing." (Tr. 17).[1]

The trial judge instructed the jury on burglary in the second degree, but denied defense counsel's request for an instruction as to a lesser included offense. The jury returned a verdict of guilty.

As our opinions make clear, "[i]f counsel ask for a lesser-included-offense instruction, it should be freely given." Walker v. United States, 135 U.S.App. D.C. 280, 283, 418 F.2d 1116, 1119 (1968); United States v. Huff, 143 U.S. App.D.C. ——, 442 F.2d 885 (1971). There must be evidence to support a finding of guilt on the lesser offense. Sparf v. United States, 156 U.S. 51, 63, 15 S.Ct. 273, 39 L.Ed. 343 (1895). This requirement is usually met by sharply conflicting testimony presenting a disputed factual element. See Sansone v. United States, 380 U.S. 343, 349–350, 85 S.Ct. 1004, 13 L.Ed.2d 882 (1965). It is also satisfied when there is no conflict in testimony but the conclusion as to lesser offense is fairly inferable from the evi-

---

* Sitting by designation pursuant to Title 28 U.S.Code Section 292(c).

1. Appellant testified that he was driving in his brother's car with several friends across town from 7th and O to 14th and M, N.W. He noticed considerable looting and numerous people on the streets and he stopped his car near the University Shop when he noticed "a lot of clothes on the sidewalk and in the street." (Tr. 54). He got out and started to pick up some things when Officer Cornish approached, asked him who was in the store, and after appellant's profession of ignorance forced him into the store at gunpoint. Inside, appellant was made to lie on the floor, was cursed and hit with a stick, and was then taken out of the store.

dence, including a reconstruction of events gained by accepting the testimony of one or more witnesses only in part. Belton v. United States, 127 U.S.App. D.C. 201, 206, 382 F.2d 150, 155 (1967); United States v. Huff, *supra*; Driscoll v. United States, 356 F.2d 324, 328–329 (1st Cir. 1966), vacated on other grounds, 390 U.S. 202, 88 S.Ct. 899, 19 L.Ed.2d 1034 (1968).

■ However, as *Belton* held, the refusal to give the lesser-included offense instruction is not error when defendant's testimony is completely exculpatory and, if believed, could only lead to acquittal, and the kind of reconstruction of events needed to support a lesser charge is neither fairly inferable from the testimony nor pointed out by defense trial counsel.

■■ Under these circumstances the request of defense counsel presented no rational basis for a lesser charge, i. e., a rational basis for a verdict acquitting the defendant of the offense charged and convicting him of the included offense, United States v. Markis, 352 F.2d 860 (2d Cir. 1965), vacated on other grounds, 387 U.S. 225, 87 S.Ct. 1709, 18 L.Ed.2d 864 (1967). While defense counsel should be given the benefit of the doubt, and all fair inferences should be indulged, in the last analysis, as our decisions have pointed out,[2] there must be some rational basis for the lesser charge; otherwise it is merely a device for defendant to invoke the mercy-dispensing prerogative of the jury,[3] and that is not by itself a permissible basis to require a lesser-included offense instruction. *See* Kelly v. United States, 125 U.S.App.D.C. 205, 207, 370 F.2d 227, 229 (1966), cert.

denied, 388 U.S. 913, 87 S.Ct. 2127, 18 L.Ed.2d 1355 (1967).

■■ This rule, like so many in the law, requires drawing a line. However the determination of what is fairly inferable from the evidence must be based on reason, calling on the understanding imparted by experience. The jury is instructed that a reasonable doubt is a doubt based on reason and "is not a fanciful doubt nor a whimsical doubt, nor a doubt based on conjecture."[4] While a judge cannot eliminate the prerogative a jury retains to disregard his instruction and to acquit on the basis of conjecture rather than reason, the judge is not required to put the case to the jury on a basis that essentially indulges and even encourages speculations as to bizarre reconstruction. This is the rule of law even though, as we all know, what happens in life is sometimes bizarre, and it may be that on the night of April 5, 1968, there was more of the unusual than is ordinary even in Washington. Clearly the record supported as a fair inference that defendant intended to help himself to some clothing, at least if he found some clothing he liked.[5] The question for the judge was whether there was a reasonable basis on which the jury could find the defendant guilty of unlawful entry beyond a reasonable doubt yet entertain a reasonable doubt whether the defendant entered through a broken store window for the purpose of committing an offense. One can speculate, e. g., that defendant took it upon himself to commit an unlawful entry because he was frightened outside, or because he was curious as to what the others in the store were doing, etc., etc.[6] But we cannot call on

---

2. See Belton, Huff, Walker, cited above, and authorities cited therein.

3. Its power to acquit "in the teeth of both law and facts." Horning v. District of Columbia, 254 U.S. 135, 138, 41 S.Ct. 53, 54, 65 L.Ed. 185 (1920).

4. Moore v. United States, 120 U.S.App. D.C. 203, 345 F.2d 97 (1965).

5. The crime of burglary is established by an unlawful entry accompanied by an in-

tent to steal that is conditional on the location of certain property the offender desires to remove. Glanville Williams, Criminal Law § 23, at 52 (2d ed. 1961); Ali Model Penal Code § 2.02(6) at 14, 129 (Tent.Draft No. 4, 1955).

6. This kind of speculative possibility as to the intent at time of entry could be hypothesized for any case of housebreaking, even where the actor later takes property and is found with the goods.

such abstract and speculative possibilities, not rooted in experience or evidence, as requiring the reversal of the ruling declining to give a lesser-included offense instruction.

Affirmed.

SPOTTSWOOD W. ROBINSON, Circuit Judge (dissenting):

Trial by jury binds inseparably the jury's functions to determine not only innocence or guilt but also the accused's precise crime if guilty. In any appropriate case, the jury's verdict may convict of an offense specifically charged or, where the evidence warrants, of another "necessarily included" within a charged offense,[1] and the jury must be indulged enough range to do so. Either the Government or the accused may solicit instructions authorizing conviction of the lesser offense,[2] and the refusal to honor a valid defense request therefor is reversible error.[3] I think appellant stood on solid ground in seeking instructions empowering the jury to convict of unlawful entry [4] if persuaded by the proof to do so.

Instructions on lesser included offenses, of course, are not for the asking. The lesser offense must be "necessarily included in" the greater,[5] and the request for instructions must be justified by the evidence,[6] and ofttimes the question whether these prerequisites are satisfied is difficult. But since the burglary charged here [7] necessarily embraced unlawful entry [8] as a lesser crime,[9] *the* only

1. Fed.R.Crim.P. 31(c).

2. See, e. g., Kelly v. United States, 125 U.S.App.D.C. 205, 207, 370 F.2d 227, 229 (1966), cert. denied, 388 U.S. 913, 87 S. Ct. 2127, 18 L.Ed.2d 1355 (1967).

3. United States v. Comer, 137 U.S.App.D.C. 214, 220–221, 421 F.2d 1149, 1155–1156 (1970); Broughman v. United States, 124 U.S.App.D.C. 54, 56, 361 F. 2d 71, 73 (1966); Young v. United States, 114 U.S.App.D.C. 42, 309 F.2d 662 (1962); Kinard v. United States, 68 App.D.C. 250, 254, 96 F.2d 522, 526 (1938).

4. D.C.Code § 22–3102 (1967), quoted *infra* note 8. The only error claimed on appeal is the refusal to give these instructions and, like the court, I limit my consideration solely to that contention.

5. Fed.R.Crim.P. 31(c). See also United States v. Marcey, 142 U.S.App.D.C. 253, 440 F.2d 281, at 285 (1971); Crosby v. United States, 119 U.S.App.D.C. 244, 245–246, 339 F.2d 743, 744–745 (1964); Virgin Islands v. Carmona, 422 F.2d 95, 101 (3d Cir. 1970).

6. See, e. g., Sansone v. United States, 380 U.S. 343, 349–350, 85 S.Ct. 1004, 13 L. Ed.2d 882 (1965); Stevenson v. United States, 162 U.S. 313, 323, 16 S.Ct. 839, 14 L.Ed. 980 (1896); Belton v. United States, 127 U.S.App.D.C. 201, 206–207, 382 F.2d 150, 155–156 (1967).

7. The single-count indictment alleged merely that appellant had entered the store "with intent to commit a criminal offense therein." The underlying statute is D.C. Code § 22–1801(b) (Supp. III 1970), in relevant part specifying that "whoever shall, either in the night or in the daytime, break and enter, or enter without breaking, any * * * store * * *, whether at the time occupied or not, * * * with intent to break and carry away any part thereof or any fixture or other thing attached to or connected with the same, or to commit any criminal offense, shall be guilty of burglary in the second degree. * * * "

8. "Any person who, without lawful authority, shall enter, or attempt to enter, any public or private dwelling, building or other property, against the will of the lawful occupant or other person lawfully in charge thereof, or being therein or thereon, without lawful authority to remain therein or thereon shall refuse to quit the same on the demand of the lawful occupant, or of the person lawfully in charge thereof, shall be deemed guilty of a misdemeanor, and on conviction thereof shall be punished by fine not exceeding $100 or imprisonment in the jail for not more than six months, or both, in the discretion of the court." D.C.Code § 22–3102 (1967).

9. See Hebble v. United States, 257 A.2d 483, 485 (D.C.App.1969). See also United States v. Fox, 140 U.S.App.D.C. 129, 131 n. 19, 433 F.2d 1235, 1237 n. 19 (1970). And see Stewart v. United States, 116 U.S.App.D.C. 411, 324 F.2d 443 (1963) (unlawful entry as lesser included offense of housebreaking under former D.C.Code § 22–1801). *Cf.* Glenn v. United States, 137 U.S.App.D.C. 120, 121, 420 F.2d 1323, 1324 (1969) (same).

remaining inquiry is whether the evidence presented a suitable occasion for instructions on each. My colleagues find no "rational basis for a verdict acquitting the defendant of the offense charged and convicting him of the included offense. * * * "[10] My interpretation of the trial record leads me to a different conclusion.

The testimony of Government witnesses, which obviously the jury believed, made it evident that appellant entered the store without right to do so. But the Government's proof, viewed in its strongest light,[11] was inconclusive beyond appellant's unauthorized presence in the store;[12] it bred uncertainty as to why he was there.[13] There was no evidence of any appropriation of merchandise therein, or of any act or statement by appellant indicating unequivocally an intent to steal.[14] Appellant's efforts to hide behind a clothes rack and to sneak away from the approaching officer connoted his mission in the store only ambiguously. They did not point inexorably to a criminal intent accompanying the entry; the jury might reasonably have taken them simply as a manifestation of appellant's awareness that, after all, he was where he shouldn't have been. Nor was the Government's presentation made any the more decisive by appellant's statement "that he was just doing what everyone else was doing;" like his ac-

tions, these words were of doubtful import.[15] Both presented to the factfinders alternatives as to the inferences properly to be drawn, and consequently as to the crime of which appellant was actually guilty.

The case, then, was not such that the jury, if it convicted, had to convict of burglary and nothing else.[16] The evidence, in my view, was susceptible to either of several interpretations, each logical and each with a different impact in terms of a verdict. If appellant's testimony [17] were believed, he was entitled to outright acquittal. If the Government's submission left a reasonable doubt as to an essential element of burglary—and here intent on entry was the critical element—appellant was entitled to an acquittal of that offense. If, on the other hand, the Government's proof were accorded enough weight to dispel any reasonable doubt of appellant's guilt of burglary, conviction of that offense was in order. I think, however, that beyond these possibilities the jury could reasonably have rejected appellant's version, accepted the Government's as to every physical event it portrayed, and still have drawn therefrom an inference adverse to a criminal intent existent when appellant entered the store. True it is that state of mind may—indeed must—be deduced from external acts, physical or verbal, and that here the evidence author-

---

10. *Supra* p. 890.

11. See, *e.g.*, Crawford v. United States, 126 U.S.App.D.C. 156, 158, 375 F.2d 332, 334 (1967).

12. "Standing alone, unauthorized presence in another's premises hardly supports an inference of entry with a criminal purpose, but when aided by other circumstances it very well might." United States v. Fox, *supra* note 9, 140 U.S. App.D.C. 131, 433 F.2d at 1237 (footnotes omitted).

13. As we have had occasion to point out, unlawful entry is "a lesser included offense distinguished [from second degree burglary] principally by an absence of criminal intent accompanying the entry." *Id.* at 131 n. 19, 433 F.2d at 1237 n. 19.

14. Compare *id.* at 130, 131, 433 F.2d at 1236–1237. Nothing in the evidence remotely suggests an intent which, if criminal at all, was other than to steal.

15. Notwithstanding evidence that a large number of people were on the streets, the record does not tell us what they were doing, and appellant's statement did not identify just what he was referring to.

16. Compare United States v. Fox, *supra* note 9, 140 U.S.App.D.C. at 131 n. 19, 433 F.2d at 1237 n. 19, where, on an evidentiary presentation somewhat similar but considerably stronger than here, the jury was afforded the choice between second degree burglary and unlawful entry upon conviction.

17. See *supra* p. 889 n. 1.

ized a deduction of criminal intent. The important point, however, is that the deduction was not compelled, and that the evidence did not foreclose a rational conclusion that appellant's entry, though without right, was otherwise non-criminal in its objective.

Had appellant testified that he came into the store without license to do so yet for a purpose other than the commission of a crime, he would clearly have been entitled to instructions on unlawful entry. In my view, he did not lose his entitlement simply because he saw no occasion to speak to a purpose for entry.[18] Quite recently, in United States v. Comer,[19] where the complaint was a refusal to instruct on manslaughter as an offense embraced within second degree murder, we dealt with the question whether instructions on a lesser included offense are automatically dispensable where the evidence for the defense does not tender a direct factual conflict on an element essential to conviction on the higher offense. We said:

> Even if the trial court finds that the facts bearing upon the element. required for the greater offense but not for the lesser are not in dispute and that no evidence introduced explicitly tends to negative a finding of the element in question, the inquiry is not at an end. Rather the court must appraise all the testimony and evidence to determine whether it is capable of more than one reasonable inference. Thus in a manslaughter case such as the present one, the inquiry is whether

the evidence bearing on malice was so compelling and unequivocal on the issue that a jury finding of no malice would be irrational.[20]

And although Comer had testified that he did not commit the fatal act, and so had not sought to show that it was done without malice, we held that the evidence not only did not compel an inference of malice but supported a reconstruction of events consistent with the theory of a killing without malice.[21]

What was so as to manslaughter in *Comer* was, I submit, so as to unlawful entry in the case at bar. I cannot say that the Government's evidence on appellant's intent upon entry into the store "was so compelling and unequivocal" that a finding that no criminal design accompanied it would have been "irrational." [22] I say rather that the evidence left room for more than one reasonable inference as to what appellant had in mind when he came into the store. It may have been pilfering, but it may also have been something else, particularly on a night long to be remembered for bizarre behavior.

I do not share my colleagues' worries that the requested instructions on unlawful entry would have invited the jury to resort to forbidden techniques in reaching a verdict. The fears they express [23] are associated with the jury's ascertainment of appellant's state of mind when he entered the store and, since that determination was required in connection with any verdict of burglary,[24] I am unable to see how lesser-offense instruc-

18. As the court states, *supra* p. 889 n. 1, appellant's defensive theory was that the arresting officer forced him inside the store.

19. *Supra* note 3.

20. 137 U.S.App.D.C. at 219, 421 F.2d at 1154. In applying the test of Sansone v. United States, *supra* note 6, 380 U.S. at 349–350, 85 S.Ct. 1004, we followed the interpretation given *Sansone* in Driscoll v. United States, 356 F.2d 324, 327 (1st Cir. 1966), vacated on other grounds, 390 U.S. 202, 88 S.Ct. 899, 19 L.Ed.2d 1034 (1968), that "[t]wo prerequisites [to denying a request for a lesser included of-

fense instruction] seem vital: that there be no factual dispute and that a finding contrary to the only evidence on the same issue would be irrational." United States v. Comer, *supra* note 3, 137 U.S.App.D. C. at 219, 421 F.2d at 1154.

21. United States v. Comer, *supra* note 3, 137 U.S.App.D.C. at 220, 421 F.2d at 1155.

22. *Id.* at 219, 421 F.2d at 1154.

23. See p. 890, *supra*.

24. See notes 7, 13, *supra*. At the same time, unlawful entry does not involve such a state-of-mind determination. See notes 8, 13, *supra*.

tions can be blamed. The situation at bar was not one in which instructions on unlawful entry could only have served to importune the jury to engage in some weird reconstruction of the testimony on an illogical pick-and-choose basis.[25] Beyond the findings prerequisite to acquittal of burglary, such instructions would merely have summoned a finding as to whether appellant's entry was authorized, and no need for an abnormal reconstruction of the evidence is apparent.[26] Nor can I agree that the instructions would have permitted the jury to speculate as to the purpose motivating appellant's entry.[27] The jury's decision on appellant's innocence or guilt of burglary necessitated a determination as to whether his purpose was to steal,[28] and instructions on unlawful entry, as a lesser included offense, would have posed no further inquiry on that score.[29] Nor was the situation one in which the instructions could only have served as an impermissible appeal to the jury's "mercy-dispensing power."[30] The jury's verdict on burglary required an evidentiary assessment of appellant's state of mind when he entered the store, and the evidence did not boil the inferential possibil-

ities down to just one. To say that it did is to say that the evidence was so strong as to compel a conviction of burglary,[31] or so weak as to compel an acquittal.[32]

Quite recently, we emphasized "that the jury's role as fact-finder is so central to our jurisprudence that, in close cases, the trial court should generally opt in favor of giving an instruction on a lesser included offense, if it is requested."[33] In like vein, we have recognized that "[h]owever implausible, unreliable or incredible only the jury ha[s] the right to make the evaluation [of the accused's] testimony"[34] proffered in support of lesser-offense instructions. The central theme of these teachings bears equally on cases wherein guilt depends critically upon a factual deduction. The inferences to be drawn from the evidence are the business of the jury, and the jury must be indulged leeway to draw and evaluate any inference rationally possible. Moreover, the traditional objective of the doctrine permitting the jury to find the accused guilty of a lesser included offense is a safeguard in cases wherein the evidence fails to establish some element of the higher offense.[35] That mission, in my view, was frustrated here.

25. See p. 890, supra. See also Belton v. United States, supra, note 6, 127 U.S. App.D.C. at 206–207, 382 F.2d at 155–156. Cf. Brooke v. United States, 128 U.S.App.D.C. 19, 22–24, 385 F.2d 279, 282–284 (1967).

26. The proprietor of the store testified unequivocally that he had not given appellant permission to go in, and the arresting officers attributed appellant's presence in the store to entry through a broken showcase window.

27. See p. 890, supra.

28. See notes 7, 13, supra.

29. Proof of criminal intent on entry was essential to conviction of the burglary charged, but the jury's function was simply to determine whether it existed. Not even the burglary charge imposed upon the jury any obligation, in the event that the jury was unable to find that the intent was criminal, to ascertain just what it was.

30. Kelly v. United States, supra note 2, 125 U.S.App.D.C. at 207, 370 F.2d at 229. See also Sparf v. United States,

156 U.S. 51, 64, 15 S.Ct. 273, 39 L.Ed. 343 (1895); United States v. Markis, 352 F.2d 860, 867 (2d Cir. 1965), vacated on other grounds, 387 U.S. 425, 87 S.Ct. 1709, 18 L.Ed.2d 864 (1967).

31. I do not understand my colleagues to urge that.

32. In that event, of course, the motion for a judgment of acquittal appellant made at trial should have been granted.

33. United States v. Comer, supra note 3, 137 U.S.App.D.C. at 219, 421 F.2d at 1154. See also Belton v. United States, supra note 6, 127 U.S.App.D.C. at 207, 382 F.2d at 156.

34. Young v. United States, supra note 3, 114 U.S.App.D.C. at 43, 309 F.2d at 663.

35. See Kelly v. United States, supra note 2, 125 U.S.App.D.C. at 207, 370 F.2d at 229; United States v. Markis, supra note 30, 352 F.2d at 866. While originally designed as an aid to the prosecution, it is clear that the accused shares equally in the benefit.