**Aurora O'NEAL as Administratrix of Estate of Tyrone O'Neal, deceased, Plaintiff-Appellant,**

**v.**

**Brinton Esty, Detective Edward MORGAN, Robert Garbus and Sergeant Leslie Williams, Defendants-Appellees.**

**No. 145, Docket 80–7286.**

United States Court of Appeals, Second Circuit.

Argued Sept. 30, 1980.

Decided Dec. 23, 1980.

been made by Peterson. Peterson had no authority to alter the work schedule and Warren

was unavailable until June 23.

Gerald Murray, Jamaica, N. Y., for plaintiff-appellant.

Larry A. Sonnenshein, Sparkill, N. Y. (Allen G. Schwartz, Corp. Counsel of the City of New York, and Angelo Aiosa, New York City, on brief), for defendants-appellees.

Before OAKES and NEWMAN, Circuit Judges, and COFFRIN,* District Judge.

NEWMAN, Circuit Judge:

This is an appeal from a judgment for the defendants-appellees entered after a jury verdict in the District Court for the Eastern District of New York (Mark Costantino, Judge) in an action for damages brought pursuant to 42 U.S.C. § 1983 (1976). The plaintiff-appellant's complaint alleged that the defendants, New York City police

* Hon. Albert W. Coffrin of the United States District Court for the District of Vermont, sitting by designation.

officers, violated the civil rights of her deceased husband,[1] Tyrone O'Neal, by falsely arresting him, beating him, and failing to provide him with prompt and adequate medical care. The principal issue on appeal is whether the District Court erred in excluding testimony concerning an admission allegedly made by one of the defendants that they "beat up" O'Neal. Concluding that this exclusion of evidence going to the heart of the case was error, we reverse and remand for a new trial.

### Facts

The bulk of the plaintiff's direct case consisted of two pretrial depositions of her husband. He testified that prior to the events giving rise to the complaint he had assisted several officers of the Narcotics Division of the New York City Police Department in an investigation of narcotics trafficking in Jamaica, Queens and that he had applied to become a paid informer. On March 4, 1978, the date of the events in question, at approximately 10:00 p. m., he entered a vacant building in Jamaica, which he knew to be a "drug shooting gallery," in an effort to obtain information. After being admitted to the second floor, he saw two hypodermic needles abandoned on the floor and a person who appeared to be receiving a drug injection from the operator of the "shooting gallery." Moments later, a contingent of police officers arrived, causing the other people at the scene to flee the premises. O'Neal testified that the officers seized the hypodermic needles and arrested and handcuffed him in a nearby room. He stated that he was then placed in an unmarked car with the four appellees. He recalled that Officer Esty, the arresting officer, sat to his right in the rear seat of the vehicle; that Sergeant Williams sat to his left; that Detective Morgan, Esty's partner, occupied the passenger side of the front seat while Officer Garbus, their other

partner, drove. He claimed that he advised the officers that he was doing undercover work and that, if allowed to make a telephone call, he could clear up the misunderstanding. He testified that Esty reacted by punching him in the face with his fist and that Williams then struck him in the face repeatedly with a hand-held police radio. He stated that he tried to avoid further blows by ducking his head between his knees but that Morgan and Garbus were able to raise him by the collar and deliver additional blows from their positions in the front seat. The beating continued in flurries, he claimed, until he lost consciousness, bleeding from his mouth, the left side of his face, and his left ear. At the precinct house, he was booked on charged of burglary in the second degree, unlawful possession of a hypodermic needle, resisting arrest, and criminal impersonation.

The plaintiff also offered the testimony of New York City Detective Wayne Carrington, who had worked with O'Neal prior to the incident. Carrington testified that he had asked O'Neal to gather information concerning drug trafficking in the City. He also stated that, at the time of the arrest, he was processing O'Neal's application to become a paid informer.

The defense consisted of the testimony of the four defendants. Their version of the events inside the building agreed with the version given by O'Neal. They stated that after they got in the car, O'Neal told them "I'm just like you," but that his answers to questions posed in "police jargon" convinced them he was not a police informer. All denied using excessive force to effect the arrest or at any time during the drive to the precinct house.

At the close of the plaintiff's case, the District Court granted the defendants' motion for a directed verdict on the claim of false arrest,[2] and submitted the remaining claims to the jury, which returned a defendants' verdict.

---

1. The plaintiff's husband died before trial due to causes unrelated to the alleged conduct of the defendants.

2. The plaintiff's challenge to this ruling is without merit. The undisputed facts established

probable cause to arrest O'Neal. The arresting officers found him on the second floor of an abandoned building, known to be a narcotics distribution point. Suspects were fleeing to the roof of the building, and O'Neal was found near abandoned hypodermic needles. The plaintiff

## The Exclusion of Evidence

The plaintiff unsuccessfully attempted on two occasions to elicit testimony concerning an admission allegedly made by one of the defendants during a telephone conversation with Detective Carrington. The plaintiff offered to prove that the officer with whom Carrington had spoken had admitted that the group of officers at the arrest scene "beat up" O'Neal.

1. The plaintiff first attempted to elicit testimony concerning the admission during the direct examination of Detective Carrington. Carrington testified that when he learned of O'Neal's arrest, he visited O'Neal in the detention center and was told by O'Neal that the defendants had beaten him after placing him under arrest. Carrington stated that he then contacted the Assistant District Attorney handling the case to ask if he could check the records "to see exactly what the officers said compared to what Mr. O'Neal [said]." The plaintiff did not pursue this line of inquiry. Instead, the examination, set out in the margin,[3] sought

challenges the arrest because the officers made no serious effort to determine the truth of O'Neal's claim that he was on the premises to gather information for the police. However, a police informer does not enjoy immunity from an arrest that is supported by probable cause. The officers had no idea O'Neal might be an informer until after the arrest. They incurred no liability by deferring ascertainment of his claim until the arrest process had been completed.

3. Q. Now, after you spoke to the Assistant District Attorney, what did you do if anything next in regard to the case?
A. I attempted to contact the arresting officer.
Q. And how did you do that?
A. I called Mr. Meel.
Q. What happened when you made that phone call? What command are you talking about?
A. I believe it was the Street Crime Unit.
Q. When you called the Street Crime Unit, what happened?
A. I asked for the arresting officer, and he wasn't available, and whoever answered the phone said they'd put me in contact with his partner and I spoke to—
Defendants' Counsel: Objection.
Q. Did you seek [sic] his partner?
A. I—
Court: Sustained.
Q. Did you seek [sic] his partner?
Court: Yes, or no. That is all.
Defendants' Counsel: Objection.
Court: Just yes or no whether he spoke to him or not.
Q. Did you speak to his partner? Would you please answer that yes or no?
Defendants' Counsel: Objection.
Court: I didn't hear that last part.
Plaintiff's Counsel: He objected to what you said. I asked—I asked if he spoke to his partner, yes or no.
Court: He may answer it only yes or no. Period. Nothing else.

A. I don't know.
Q. Well did somebody take the phone call—the person—when they said they were going to put you in touch with his partner, did they transfer you to another officer?
A. Another officer got on the phone.
Q. Did that officer tell you he was his partner?
A. Yes, he did.
Q. And did you ask that officer if he was present on the night of the arrest of Tyrone O'Neal at the scene?
A. Yes, I did.
Q. What did he say?
Defendants' Counsel: Objection. May we approach the bench?
(Whereupon, the following discussion was held at the side bar)
Defendants' Counsel: Your honor, we contend that any of this—
Court: None of this is relevant.
Plaintiff's Counsel: Your honor, can I say one thing? I can't say it?
Court: The only issue in this case is whether the policemen were there, had probable cause or reasonable cause to make the arrest and believed that a crime had been committed. That is it. That is where we are at, not what he thinks or what he said or what somebody told him.
Plaintiff's Counsel: Can I say one thing, your honor? He stated his officer told him he was the partner of the arresting officer, and he was present at the arrest which makes him one of the defendants in this case.
Court: No it doesn't.
Defendants' Counsel: No foundation.
Court: It does not help.
Plaintiff's Counsel: That was my point. Then there is an admission. I am going to ask him about that. That was my point.
Court: Is he a defendant in this case?
Plaintiff's Counsel: I beg your pardon?
Court: Is he a defendant in this case?
Plaintiff's Counsel: I beg your pardon?
Court: Is he a defendant in this case?

to establish the identity of the person who had spoken to Carrington and the content of the conversation. The plaintiff elicited testimony that Carrington had spoken by telephone to a person who identified himself as one of the partners of the arresting officer. Objection to the content of that conversation was sustained.

The defendants contend that the District Court's exclusion of the conversation was proper because the plaintiff failed to satisfy the authentication or identification requirement of Rule 901(a) of the Federal Rules of Evidence. Rule 901(a) provides that "the requirement of authentication or identification is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." The Advisory Committee Note to the Rule explains that "authentication and identification represent a special aspect of relevancy [citation omitted]. Thus a telephone conversation may be irrelevant because on an unrelated topic or because the speaker is not identified. The latter aspect is the one here involved." The Advisory Committee Note further explains that "this requirement of showing authenticity or identity falls in the category of relevancy dependent upon fulfillment of a condition of fact and is governed by the procedure set forth in Rule 104(b)."[4]

■ The allegation of fact on which the relevancy of the admission depended in this case was that the person who made the admission to Carrington was one of the defendants. If this allegation was supported by sufficient evidence, the admission was clearly relevant to the claim of police brutality. Carrington could not identify the voice of the person with whom he spoke as that of one of the defendants, but voice recognition is not required. Under Rule 901(b)(6), circumstantial evidence, including

self-identification, may be sufficient to identify the person who answers a telephone call. In this Circuit, self-identification of the person called at a place where he reasonably could be expected to be has long been regarded as sufficient. See *United States v. Markis*, 352 F.2d 860, 864 (2d Cir. 1965); *Van Riper v. United States*, 13 F.2d 961, 968 (2d Cir.), *cert. denied sub nom. Ackerson v. United States*, 273 U.S. 702, 47 S.Ct. 102, 71 L.Ed. 848 (1926). Carrington's testimony showed that he called the arresting officer at the Street Crime Unit, the place where all the defendants could be expected to be; that the call was referred to one of the arresting officer's partners; and that the person to whom the call was referred identified himself as the arresting officer's partner. These circumstances were sufficient to support a finding that the person who made the admission was one of the arresting officer's partners, Garbus or Morgan. See *United States v. Fassoulis*, 445 F.2d 13, 17 (2d Cir.), *cert. denied*, 404 U.S. 858, 92 S.Ct. 110, 30 L.Ed.2d 100 (1971); *United States v. LoBue*, 180 F.Supp. 955, 956 (S.D.N.Y.1960), *aff'd sub nom. United States v. Agueci*, 310 F.2d 817 (2d Cir. 1962).

The defendants contend that even if the plaintiff succeeded in showing that the admission was made by either Garbus or Morgan, exclusion of the admission was proper because Rule 901(a) required the plaintiff to identify which of these two defendants made the admission. Although the defendants ground their argument on Rule 901(a), they could perhaps more plausibly base it on Rule 801(d)(2), which provides that a statement is not hearsay if it is "offered against *a* party" and is "*his* own statement." (Emphasis added). Here the plaintiff presented a sufficient basis for the jury to find that the admission was made by

Defendants' Counsel: Who?
Plaintiff's Counsel: Yes, that is my contention.
Defendants' Counsel: There has been no foundation for the question.
Court: Yes.
Plaintiff's Counsel: Respectfully except.
Court: Okay.

4. Rule 104(b) provides:

*Relevancy conditioned on fact.* When the relevancy of evidence depends upon the fulfillment of a condition of fact, the court shall admit it upon, or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition of fact.

either Garbus or Morgan, but no evidence from which the jury could select between the two.

The proper handling of an admission that could reasonably be found to have been made by one of the defendants, not further identified, in a multi-defendant civil trial poses an issue of some uncertainty, which appears not to have been previously considered, at least by this Circuit. A strict approach to the rules of evidence might suggest that an admission is not relevant and hence cannot come into evidence until the trial judge, acting under Rule 104(b), has determined that there is at least sufficient evidence (adduced or to be presented) for the jury reasonably to find that it was made by the particular defendant against whom it is offered. On the other hand, justice might be better served and the Rules of Evidence more reasonably construed by permitting a plaintiff to inform the jury that one of the defendants made an admission, leaving to each defendant the burden of persuading the jury that the admission was not made by him.

Support for the latter approach may be drawn by analogy to the way some courts have handled somewhat similar problems in the field of tort law. One situation arises when the plaintiff presents evidence to show that two persons acted negligently toward him, but is unable to determine which of the two caused the injury he sustained. Professor Prosser offers the example of two defendants negligently firing weapons in a public area, with the bullet from one striking the plaintiff. If from ballistics or other evidence the plaintiff cannot determine which defendant caused his injury, Professor Prosser endorses the view that the burden of persuasion shifts to the defendants to prove that they did not cause the injury; if the jury is not persuaded by the evidence of either defendant, liability is imposed upon both defendants. See Prosser, *The Law of Torts* 243 and nn. 54–57 (4th ed. 1971) (collecting cases). Another situation occurs when a plaintiff cannot even ascertain which defendant was negligent, but offers evidence that at least one of a group of defendants negligently caused him injury. In *Ybarra v. Spangard*, 93 Cal.App.2d 43, 208 P.2d 445 (1949), an unconscious plaintiff undergoing an appendectomy sustained injury to his shoulder. The Court, using principles of *res ipsa loquitur*, permitted the jury to impose liability upon all the medical personnel involved in the operation, though it was unlikely that each was at fault. In effect, each defendant was assigned the burden of proof on the issues of both negligence and causation.

These examples are distinguishable from the situation in this case,[5] but they nevertheless indicate judicial aversion in some circumstances to permitting a loss to fall upon an innocent plaintiff in circumstances where a limited group of defendants, one of whom is responsible for the injury, is in a better position than the plaintiff to pinpoint individual responsibility. We find the analogies sufficiently helpful to rely upon them at least for the limited purpose of developing a procedure for placing an admission in evidence in a multi-defendant civil trial. We conclude that when a plaintiff presents to the trial judge sufficient evidence from which a jury can reasonably find that an admission was made by one of a limited group of two or more of the defendants, the admission should be received in evidence and the jury should be instructed that it may consider the admission against each member of that group of defendants who fails to persuade the jury that he did not make the statement. In this case, since the plaintiff's evidence was sufficient to permit the jury to find that the admission was made by either Garbus or

---

**5.** In the shooting example, both defendants were shown to have acted negligently; the burden of proof was shifted only on the issue of causation. The operation case is an even further departure from the traditional rule requiring a plaintiff to prove individual responsibility, but it involves a special responsibility for the plaintiff's safety assumed by all of the medical personnel in attendance. The case was subsequently explained and limited on this basis. *Gobin v. Avenue Food Mart*, 178 Cal.App.2d 345, 2 Cal.Rptr. 822 (1960). *See generally* Prosser, *supra* at 223.

Morgan, the admission should have been received in evidence in the cases of these two defendants, with the burden of proof on each of them to disprove that he made the statement. Of course, if both denied making the statement, the jury should then have been told that if it was persuaded by their denials and by any other evidence tending to show that neither made the admission, the jury should not consider the statement against either of them. At this point in the trial, the statement would not have been admissible against either of the other two appellees, Esty and Williams.

2. The plaintiff's second attempt to elicit testimony concerning the admission occurred during her cross-examination of the arresting officer, defendant Esty. The questioning, set out in the margin,[6] sought to pursue testimony by defendant Garbus that Esty had told Garbus that it was Esty who had spoken to Carrington. When Esty was asked whether he had talked to Carrington, objection was made and sustained. The objection was initially made on the ground that the answer would be relevant only to the false arrest claim, which had been dismissed at the close of the plaintiff's case. When plaintiff's counsel argued that the conversation contained the admission of a beating and was relevant to the excessive force claim, defendants' counsel further objected on the ground that Carrington had testified that he had spoken to one of the arresting officer's *partners*, implying that he had not spoken to Esty, who was the arresting *officer*.

■ This objection was not well taken. Even though some of Carrington's testimony indicated that he had spoken to one of the partners of the arresting officer, the plaintiff was not bound by this version and was entitled to ask Esty if he was the one who had spoken to Carrington. If Esty had acknowledged speaking to Carrington, then, even if Esty denied making the admission, Carrington could have been recalled to testify to the content of the conversation, leaving for the jury the credibility issue as to whose version of the conversation was

6. Q. By the way, were you present when Officer Garbus testified in the courtroom?
A. Yes, I was.
Q. Do you recall him testifying that he heard you talking on the telephone to Detective Carrington? Do you recall that?
A. To the best of my recollection, I don't think he testified that he heard me talking on the telephone.
Q. Well, you remember him testifying about that?
A. To the best of my recollection I heard him say that I notified him—I advised him that I talked to one Detective Carrington.
Q. That you advised him then. I see. Well, did you talk to Detective Carrington, yes or no, on the phone?
Defendants' Counsel: I would like to object at this time. Can I approach the bench?
Court: No, I will sustain it.
Q. Did you receive a telephone call from or did you call Detective Carrington to discuss this arrest?
Defendants' Counsel: Your honor, I would like to reiterate my objection to this line of questioning. Can we approach the bench or is counsel going to continue to—
Plaintiff's Counsel: Certainly.
(At the side bar)
Defendants' Counsel: Your honor, this line of questioning is irrelevant. It goes to the issue of whether there was a false arrest, or he should have tried to make a contact with a

contact, and it is not relevant to any germane issue in this case.
Court: False arrest is out.
Plaintiff's Counsel: Well, he said that, I didn't say that.
Court: I said it's out.
Defendants' Counsel: He mentioned—
Court: That is the only reason for it. That is the only reason for the question.
Plaintiff's Counsel: The reason for the question, if I may—the reason for the question is he asked Detective Carrington—I am talking of an admission. I am [not] talking to false arrest. I am talking about the assault on this individual. Our allegation is he made an admission to Detective Carrington as to what happened that evening. As far as the assault, it is still in the case.
Court: What was the admission?
Plaintiff's Counsel: I never got it into evidence because I was stopped, but the admission is he told them that they beat him up.
*Defendants' Counsel: That is not what Detective Carrington said. That is not what Detective Carrington said so far as he testified. He said he talked to the arresting officer's partner. That is—*
Court: That is all he—
Plaintiff's Counsel: That is what he was told on the phone, but apparently that was not—
Court: I will sustain the objection. I will take my chances with it.

truthful.[7] Moreover, if Esty had denied even speaking to Carrington, Carrington's version of the conversation would nonetheless have been admissible against him, because Garbus's testimony provided the jury with a reasonable basis to find that Esty was the person who had spoken to Carrington. Like Garbus and Morgan, Esty would then have had the burden of proof to persuade the jury that he had not spoken to Carrington, since the evidence would then have continued the uncertainty as to which of these three defendants had made the admission.

 Since in each of the two instances described the District Court erred in excluding testimony concerning an admission crucial to the plaintiff's brutality claim, the judgment is reversed and a new trial is ordered.[8]

---

7. If Esty acknowledged being the officer who spoke to Carrington, then it would have been appropriate to instruct the jury that the conversation was to be considered only against Esty and was to be withdrawn from the cases involving Garbus and Morgan, since evidence at that point in the trial would have precluded a jury from reasonably finding that either Garbus or Morgan had spoken to Carrington.

8. The writer would prefer to limit the remedy at this point to a remand for a preliminary hearing before the District Court under Rule 104(a) on the issue of which one of the appellees spoke to Carrington. Cf. United States v. Shotwell Mfg. Co., 355 U.S. 233, 78 S.Ct. 245, 2 L.Ed.2d 234 (1957). Rule 104(a) provides:

Questions of admissibility generally. Preliminary questions concerning the qualification of a person to be a witness, the existence of a privilege, or the admissibility of evidence shall be determined by the court, subject to the provisions of subdivision (b). In making its determination it is not bound by the rules of evidence except those with respect to privileges.

A hearing under Rule 104(b) might well eliminate all question as to whether it was Esty, or Garbus, or Morgan who spoke to Carrington, for example, if Esty were to acknowledge the conversation (even though disputing its content). If the identity of the declarant became clear, a new trial would be appropriate only as to him. Even if, after a hearing, a jury question remained as to whether Carrington spoke to Esty, Garbus, or Morgan, a new trial would not be warranted as to Williams, as to whom plaintiff has made no showing to justify admission of the conversation. A defendant should not lose a judgment in his favor and be obliged to face retrial if evidence improperly excluded cannot in any event be considered against him.

Now that a retrial is ordered, however, perhaps the plaintiff will develop a record sufficient to show that the conversation is admissible against all four defendants under Rule 801(d)(2)(C) or (D), on the theory that when police officers jointly participate in law enforcement activity, they authorize each other to report their activities to fellow police officers or become each other's agents for purposes of such reporting.